139 P.3d 741

**Alisha Ann MURPHY, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 31154.

Court of Appeals of Idaho.

March 24, 2006.

Review Denied July 10, 2006.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

GUTIERREZ, Judge.

Alisha Ann Murphy appeals the district court's summary dismissal of her application for post-conviction relief. We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

In the underlying criminal case, Murphy was convicted of first degree murder. The state's evidence indicated that on the night of December 18, 1995, Murphy entered the room of her children and began choking her seven-year-old son, Jimmy, with a belt. James, her husband, intervened and they began to argue. The argument continued in the kitchen, and Murphy knocked her husband unconscious with a cast-iron frying pan.

Murphy then obtained a gun from a bedroom and returned to the kitchen. According to Jimmy's trial testimony, Jimmy observed his mother kneeling over his father's motionless body and placing a gun into James' hand. She appeared to be pointing the gun in the direction of his father's face. Jimmy ran back to his room and then he and his four-year-old sister, Olive, heard a loud noise. Murphy gathered the children and they walked through the kitchen where James' body was lying on the floor, exited the house and drove away.

It is undisputed that Murphy and her husband were involved in a turbulent relationship marked by excessive alcohol use and physical violence. Both were extremely intoxicated on the night in question. Murphy always maintained her innocence, claiming her husband committed suicide. According to Murphy, as the fight escalated she grabbed her two children and fled the house as she had done so many times before. This version of the events was corroborated by Jimmy's initial statements to the police that he saw his father waving to them from the doorway of the house as they drove away. Murphy also insisted that after she left, her husband recorded a telephone message on the answering machine of Norma Jo Robinson, Murphy's mother,[1] proving that he was still alive. Finally, the autopsy report prepared at the time by pathologist, Dr. Kerry Patterson, listed the manner of death as indeterminate.

Several years later, Jimmy changed his story. Jimmy said that his mother had threatened to hurt him if he did not tell the police about seeing his father waving at the door. With this additional evidence, Murphy was charged with the murder of her husband. In December 1999, before the grand jury, the state's expert, Dr. Patterson, testified consistent with his autopsy report, that the manner of death was indeterminate.

Murphy's trial counsel advised her to use a "battered woman syndrome" defense, which she rejected because she refused to admit to committing the fatal act. Murphy also re-

1. The voice on the answering machine audio tape said "Forgive me. I don't have nothin' to say to nobody. Pick up the kids tomorrow...."

jected her counsel's recommendation to accept a reduced voluntary manslaughter charge offered by the state. Then, on the eve of the trial—in September of 2000, more than four years after James' death—Dr. Patterson, changed his opinion about the manner of death from "indeterminate" to "homicide" after examining for the first time the gun involved and the gunshot residue report. Dr. Patterson's position at trial regarding the manner of death was contrary to his autopsy report rendered three days after the death of James and contrary to his testimony before the grand jury. Defense counsel moved for a mistrial but did not request a continuance based on this change of position. At the conclusion of the trial, the jury returned a verdict of guilty. The district court imposed a life sentence with no possibility of parole. We affirmed Murphy's conviction and sentence. *State v. Murphy*, Docket No. 27853, 139 Idaho 388, 79 P.3d 747 (January 8, 2003) (unpublished).

Murphy subsequently filed a *pro se* application for post-conviction relief, raising numerous claims involving ineffective assistance of counsel, police misconduct, prosecutorial misconduct, and judicial misconduct, and incorporating a motion to amend the application upon completion of discovery. The district court appointed counsel and issued a notice of intent to dismiss Murphy's application. Post-conviction counsel responded to the court's notice by filing a memorandum and affidavits from Murphy and her trial counsel.

The court summarily dismissed all of Murphy's claims except an ineffective assistance of counsel claim relating to the testimony of Dr. Patterson and trial counsel's failure to obtain a forensic pathologist to aid the defense. The state filed a motion for summary dismissal, supported by another affidavit from Murphy's trial counsel. The court then vacated its prior summary dismissal order and directed Murphy to respond to the state's motion.

Murphy's post-conviction counsel responded by filing a motion seeking funds to retain an independent forensic pathologist to fully review the reports in the underlying criminal matter, including but not limited to James'

autopsy report, the gunshot residue report, Dr. Patterson's pathology reports, and all other relevant evidence and related trial testimony. The district court denied Murphy's request for funds to retain a pathologist and granted the state's motion for summary dismissal. Murphy timely appeals, contending that the district court erred in summarily dismissing the claims of ineffective assistance of counsel regarding trial counsel's failure to retain a pathologist, to put on the telephone message evidence that James was alive after Murphy left the scene, and to move to strike a juror. Murphy further contends that the district court erred in denying funds for retention of an expert and in failing to provide adequate notice of the grounds for dismissal of certain claims.

## II.

## STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding that is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Similar to a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19–4907; *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). An application for post-conviction relief differs from a complaint in an ordinary civil action, however, for an application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the application. I.C. § 19–4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

 Idaho Code Section 19–4906 authorizes summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of an application pursuant to I.C. § 19–4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State,* 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State,* 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988); *Ramirez v. State,* 113 Idaho 87, 88, 741 P.2d 374, 375 (Ct.App.1987). Allegations contained in the application are insufficient to prevent summary dismissal if they are clearly disproved by the record of the original proceedings, or do not justify relief as a matter of law. *Cooper v. State,* 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975). Summary dismissal of an application for post-conviction relief may be appropriate even where the state does not controvert the applicant's evidence because the court is not required to accept the applicant's mere conclusory allegations, unsupported by admissible evidence. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994); *Baruth v. Gardner,* 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct.App.1986).

 On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file which, if true, would entitle the applicant to relief. *Griffith v. State,* 121 Idaho 371, 373, 825 P.2d 94, 96 (Ct.App.1992); *Whitehawk v. State,* 116 Idaho 831, 834, 780 P.2d 153, 156 (Ct.App.1989). Moreover, the court liberally construes the facts and reasonable inferences in favor of the non-moving party. *Ricca v. State,* 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App. 1993).

### III.

## INEFFECTIVE ASSISTANCE OF COUNSEL

 In order to prevail on a claim of ineffective assistance of counsel, the post-conviction applicant must demonstrate both that her attorney's performance was deficient, and that she was thereby prejudiced in the defense of the criminal charge. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Hassett v. State,* 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Davis v. State,* 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989). To show deficient performance, a defendant must overcome the strong presumption that counsel's performance was adequate by demonstrating "that counsel's representation did not meet objective standards of competence." *Roman,* 125 Idaho at 648–49, 873 P.2d at 902–03. *See also Vick v. State,* 131 Idaho 121, 124, 952 P.2d 1257, 1260 (Ct.App.1998). If a defendant succeeds in establishing that counsel's performance was deficient, she must also prove the prejudice element by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The benchmark for judging a claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692.

### A. Failure to Retain a Pathologist

 It is well established that we will not attempt to second-guess trial counsel's strategic decisions unless those decisions are made upon the basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *State v. Perez,* 99 Idaho 181, 184–85, 579 P.2d 127, 130–31(1978); *State v. Tucker,* 97 Idaho 4, 10, 539 P.2d 556, 562 (1975). Inadequate preparation prior to trial may be sufficient to

**146**

show deprivation of the right to effective assistance of counsel. *Tucker*, 97 Idaho at 10, 539 P.2d at 562. Strategic choices made after incomplete investigations are reasonable only so far as reasonable professional judgments support the limitations on investigation. *Wiggins v. Smith*, 539 U.S. 510, 533, 123 S.Ct. 2527, 2541, 156 L.Ed.2d 471, 492 (2003); *see also Rompilla v. Beard*, 545 U.S. 374, ——, 125 S.Ct. 2456, 2463, 162 L.Ed.2d 360, 372 (2005) (failure to investigate material relied upon by prosecution was unreasonable); *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1514, 146 L.Ed.2d 389, 419 (2000) (unreasonable failure to conduct thorough investigation); *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 3125, 97 L.Ed.2d 638, 657 (1987) (limited investigation reasonable where counsel interviewed all known witnesses and uncovered double edge of much more harmful than helpful information); *Darden v. Wainwright*, 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144, 160 (1986) (double edge information justifies limited investigation); *Mitchell v. State*, 132 Idaho 274, 280, 971 P.2d 727, 733 (1998) ("The duty to investigate requires only that counsel conduct a reasonable investigation."); *State v. Bingham*, 116 Idaho 415, 425–26, 776 P.2d 424, 434–35 (1989) (reasonable not to employ expert witness where counsel did not need help to impeach change of opinion by victim's doctor and sought to avoid double edge of expert being cross-examined). We recognize that a defendant's lawyer does not always have a duty to consult experts when the government is proposing to put on expert witnesses. "There may be no reason to question the validity of the government's proposed evidence or the evidence may be so weak that it can be demolished on cross-examination." *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir.2001).

■■■■ The American Bar Association (ABA) standards reflect prevailing norms of practice and are guides in determining the nature and extent of the duty to investigate:

Defense counsel should conduct a prompt investigation of the circumstances of the case and *explore all avenues leading to facts relevant to the merits of the case* and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

ABA STANDARDS FOR CRIMINAL JUSTICE, The Defense Function, § 4–4.1 (3d ed.1993) (emphasis added); *Mitchell*, 132 Idaho at 279–80, 971 P.2d at 732–33. In assessing the reasonableness of counsel's investigation, we consider not only the quantum of evidence known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins*, 539 U.S. at 527, 123 S.Ct. at 2538, 156 L.Ed.2d at 488; *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *State v. Mathews*, 133 Idaho 300, 307, 986 P.2d 323, 330 (1999) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); (*Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695). Moreover, counsel is bound to make reasonable efforts to obtain and review material that the prosecution will probably rely on as evidence. *Rompilla*, 545 U.S. at ——, 125 S.Ct. at 2460, 162 L.Ed.2d at 369.

■■■■ The affidavit of Murphy's trial counsel contained his admission of deficient performance and stated, in pertinent part:

That during the defense of Mrs. Murphy, I prepared for trial assuming that Dr. Patterson would testify consistent with [his] testimony given to the grand jury in December of 1999, and the opinions given in his original pathology report. In each of those matters, he concluded that the cause of death to Mr. Jim Murphy was "indeterminate."

That on the day of trial, I learned that Dr. Patterson was going to change his conclusions about Mr. Murphy's cause of death from "indeterminate" to "homicide," based upon his review of the gun shot residue report, and actual viewing of the alleged murder weapon the night before.

I relied upon Dr. Patterson's prior conclusions, and failed to procure my own witnesses to review that same evidence.

Dr. Patterson also provided additional testimony at trial regarding the proximity in time between the blow to Mr. Murphy's head and the time of death. This was an area of questioning for which I did not have a rebuttal witness.

I believe I should have moved for a continuance when Dr. Patterson changed his opinion regarding the cause of death at trial. I objected, and moved for a mistrial, but I didn't request a continuance. I believe I should have done so, since I needed time to hire an expert to review the evidence based upon the new opinions given by Dr. Patterson.

While trial counsel's candor is commendable, we assess his conduct by way of an objective review of reasonableness under prevailing professional norms so as to eliminate the distorting effects of hindsight. *Wiggins,* 539 U.S. at 523, 123 S.Ct. at 2536, 156 L.Ed.2d at 485. We must also make every effort to avoid a *post hoc* rationalization of the attorney's conduct. *Id.* at 526–27, 123 S.Ct. at 2537–38, 156 L.Ed.2d at 487–88.

■■■■ Under our standard for adequate performance, Murphy's trial counsel rendered deficient service when he failed to ask for a continuance to consult with a pathologist after it became clear that the state's expert would change his manner-of-death opinion from indeterminate to homicide. *See generally State v. Saxton,* 133 Idaho 546, 989 P.2d 288 (Ct.App.1999) (regarding standards for continuance and failure to obtain hearing on a motion). Indications on the day of trial that the prosecution planned to rely on new evidence should have raised "red flags" alerting counsel to the need for further review. *See Rompilla,* 545 U.S. at ——, 125 S.Ct. at 2469, 162 L.Ed.2d at 378. Murphy's counsel knew the forensic pathologist's opinion would be at the very heart of the prosecution's case, *see Rompilla* 545 U.S. at ——, 125 S.Ct. at 2470, 162 L.Ed.2d at 379–80 (O'Connor, J., concurring), and would eviscerate the defense that the death was a suicide. *Id.* at ——, 125 S.Ct. at 2470, 162 L.Ed.2d at 379–80. The suicide theory had some support in

that Murphy was not charged until four years after her husband's death, and her young child, Jimmy, had earlier claimed to have witnessed his father waving to them from the door of their house as they drove away. It is clear therefore that Dr. Patterson's opinion at trial was not without weakness; rather, it tipped to a homicide manner of death on the basis of data subject to expert interpretation—data that had been available for years. Consultation with another pathologist may have enabled Murphy's counsel to present a contrary expert opinion or to more effectively cross-examine Dr. Patterson regarding his changed expert testimony. These circumstances combine to demonstrate that counsel's failure, in this case, to seek a continuance so he could retain and consult a forensic pathologist was constitutionally deficient.

Having found evidence sufficient to make a *prima facie* showing of deficient performance, we must address the *Strickland* requirement of prejudice before Murphy's ineffective assistance of counsel claim can proceed. In order to make the required showing of prejudice, Murphy requested funding pursuant to I.C. § 19–4904 to retain an independent forensic pathologist to review the autopsy reports, gunshot residue report, and Dr. Patterson's pathology reports and related testimony. The district court considered Murphy's motion for appointment of or funding to retain expert witness, to be "in essence a request for discovery." In denying Murphy's motion, the court reasoned that the conclusory statements of Murphy and her appointed counsel did not point to any specific facts as to which an expert might testify. The court also found no showing of exculpatory evidence that might result from further investigation; for instance, there was no showing that the gun shot residue report was flawed or that the opinions of Dr. Patterson were not supported by reliable evidence.

■■■■ Idaho Code Section 19–4904 states: "If the applicant is unable to pay court costs and expenses of representation, including stenographic, printing, *witness fees and expenses,* and legal services, these costs and expenses, and a court-appointed attorney

may be made available to the applicant in the preparation of the application, in the trial court, and on appeal...." I.C. § 19–4904 (emphasis added). We are aware of no reported Idaho decisions applying Section 19–4904 to a request for the assistance of an expert. A request under I.C. § 19–4904 for funds to retain an expert may be viewed as analogous to a request for discovery in a post-conviction action. When an applicant believes discovery is necessary for acquisition of evidence to support a claim for post-conviction relief, the applicant must obtain authorization from the court to conduct discovery. I.C.R. 57(b); *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (2001). Whether to authorize discovery is a matter directed to the discretion of the trial court. I.C.R. 57(b); *Aeschliman v. State*, 132 Idaho 397, 402, 973 P.2d 749, 754 (Ct.App.1999); *Fairchild v. State*, 128 Idaho 311, 319, 912 P.2d 679, 687 (Ct.App.1996). The district court is not required to order discovery "unless necessary to protect an applicant's substantial rights." *Griffith v. State*, 121 Idaho 371, 375, 825 P.2d 94, 98 (Ct.App.1992). "Reasonable discovery may be permitted subject to supervision and firm control by the trial court to prevent abuses." *Merrifield v. Arave*, 128 Idaho 306, 310, 912 P.2d 674, 678 (Ct.App.1996). "Fishing expedition" discovery should not be allowed. The UPCPA provides a forum for known grievances, not an opportunity to research for grievances. *See Charboneau v. State*, 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004). Hence, a post-conviction action is not a vehicle for unrestrained testing or retesting of physical evidence introduced at the criminal trial.

In *Raudebaugh*, our Supreme Court concluded that the trial court had discretion to deny discovery in a post-conviction action where the applicant did not show any probability that further scientific examination or independent testing would yield exculpatory evidence. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. There, Raudebaugh, who had been convicted of second degree murder, sought release of the knife used as the murder weapon for examination by an expert

witness to determine if there was fingerprint evidence that could have assisted him at trial. *Id.* at 604, 21 P.3d at 926. But, there was no showing that the state's fingerprint testing was flawed or that there was new technology that would make current testing more reliable. *Id.* at 605, 21 P.3d at 927. Raudebaugh was not able to establish the prejudice element of his ineffective assistance of counsel claim because his allegations were merely speculative. *Id.*

The *Raudebaugh* holding does not bar perfection of a valid post-conviction claim that an attorney's ineffectiveness prevented the acquisition and presentation of the very evidence necessary for exculpation. Under our Supreme Court's direction in *Raudebaugh*, a request to retest a murder weapon for finger prints is purely speculative when there is no more reliable technology available and no evidence suggesting that the state's testing may have been flawed. Thus, if the petitioner shows no basis to believe that discovery is necessary to protect her substantial rights, the district court is not required to order discovery. *See Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927.

■ Unlike in *Raudebaugh*, the record here establishes that retention of an expert pathologist is necessary to protect Murphy's substantial rights to effective assistance of counsel. For a period of over four years prior to the trial, the state's pathologist had indicated suicide was a possibility. When the matter went before the grand jury, Dr. Patterson's testimony was consistent with his initial autopsy report that he could not determine whether the death was a homicide. The prosecution proceeded on the strength of Jimmy's retraction of his initial report to the police.[2] On the night before the trial, however, Dr. Patterson changed his opinion predominately as a result of viewing the gun shot residue report. At trial, Dr. Patterson opined that James' gunshot wound could not have been self-inflicted since he had gunshot residue only on the palms of his hands, with none on the back of the hands. This leaves a

2. Jimmy testified at trial that he saw his mother place the gun in James' hand prior to the gun being fired. Olive testified at trial that she saw her mother place the gun in James' hand after the gun was fired and right before they left the home and drove away.

question, however, as to why James' palms would not have been likewise sheltered from residue if Murphy's hands were covering his. Dr. Patterson also testified that a number of factors were inconsistent with suicide. Specifically in this case, he relied on the position where the weapon fell, the gunshot residue report, the angle of the wound and the probability that James was unconscious at the time of the shooting. We note that although the position of the gun, as well as the evidence that the victim was unconscious were relied on for rendering an opinion of homicide, these were unchanged from the time when Dr. Patterson testified before the grand jury that he couldn't determine if it was a homicide. In light of the inconsistencies in the conclusions of the state's expert, the lack of clarity in his explanation of how the gunshot residue indicated a homicide and the conflicting nature of the state's theory on how the gun was manipulated to make it appear as if a suicide had occurred, we conclude that the allegations on the prejudice prong certainly go beyond speculation. The record before us raises serious questions on the reliability of Dr. Patterson's opinion concerning the manner of death that can only be addressed by an expert interpreting all the relevant facts and reports produced on this question.

Accordingly, the I.C. § 19–4904 motion for funding to retain an expert witness should have been granted in order to protect Murphy's substantial right to effective assistance of counsel. The district court erred in summarily dismissing this claim of ineffective assistance of counsel without first granting Murphy the opportunity to consult with a forensic pathologist.

### B. Failure to Present Evidence of Telephone Message

Murphy alleged that James left a message on Norma Jo Robinson's answering machine, proving he was still alive after Murphy fled her home. Murphy contends that the district court erred in summarily dismissing the claim that her trial counsel was ineffective for failing to call Robinson to testify about the message. The district court premised its dismissal on the argument advanced by the state—that Murphy's claim failed because the decision not to call Robinson was a tactical one.

Murphy contends first that the district court's dismissal cannot stand because it was based on grounds for which she did not receive adequate notice. A district court need not provide the applicant with notice if the court's dismissal is in response to a sufficiently specific motion from the state. *Saykhamchone v. State,* 127 Idaho 319, 322, 900 P.2d 795, 798 (1995); *Baruth,* 110 Idaho at 159, 715 P.2d at 372. The motion, however, must be specific as to the evidentiary or legal bases for the requested dismissal in order to provide the applicant with a meaningful opportunity to respond. *Saykhamchone,* 127 Idaho at 323, 900 P.2d at 799. If the motion is not specific, any dismissal granted by the district court will be treated as a *sua sponte* dismissal subject to the notice requirement of I.C. § 19–4906(b). *Martinez v. State,* 126 Idaho 813, 818, 892 P.2d 488, 493 (Ct.App.1995). Likewise, if the district court dismisses an application on grounds other than those noticed in the motion, it too will be deemed a *sua sponte* dismissal. *Baruth,* 110 Idaho at 159, 715 P.2d at 372.

Because the state's motion and the supporting affidavit of trial counsel specifically challenged the deficient performance allegation by showing that counsel made a tactical decision not to present evidence of the phone call, Murphy received adequate notice of the proposed ground for dismissal of this claim. By affidavit, Murphy's trial counsel elaborated on his decision not to call Robinson:

Mr. Robinson, Mr. Gold and I explored the possibility of calling Ms. Murphy's mother, Norma Jo Robinson, and her mentally-challenged sister, Elaina Grammar, as witnesses in this matter. After conferring on this matter, we decided that doing so would hurt the defense case. We determined, before the trial, that Ms. Grammar was not a reliable witness. She changed her recitation of the facts frequently. We determined that Ms. Robinson was neither reliable nor a[sic] helpful to the defendant's case and that her demeanor would

have harmed the defendant at trial. This determination was somewhat borne out when, during the trial, she was charged with (and later convicted of) felony witness intimidation for threatening the child witnesses in the hall of the courthouse.

We did look in to [sic] how and where to obtain the victim's cell phone records, but ultimately did not get them. I believe that had we obtained and presented those records, regardless of what they might have shown, they would have been of little to no evidentiary value, in part because they could establish only that a call had been placed, not that the victim was the person who placed the call.

The district court determined that counsel's decision not to put Robinson on the witness stand was a matter of reasonable strategy or trial tactics. We agree. On the record before us, the claim that trial counsel unreasonably failed to call Robinson as a witness was properly dismissed on the basis that counsel's decision was one of legitimate trial strategy.

## C. Failure to Strike a Juror

■ Murphy also contends that the district court erred in summarily dismissing her claim that trial counsel was ineffective for failing to move to strike a juror who allegedly had fallen asleep at trial. In her post-conviction application, Murphy alleged:

... failur[e] to approach the court about a Juror on the Jury that fell asleep during trial: Juror # 2 fell asleep during trial, I told [defense counsel] at trial and I also mentioned the fact that a Juror fell asleep at the hearing for substitution for counsel 10–31–00. This will be in the hearing transcripts for 10–31–00. I do not have acces[s] to the hearing transcripts but I know I mentioned the fact that the Juror fell asleep that day 10–31–00.

The district court dismissed Murphy's claim for lack of admissible evidence. Murphy argues that because she identified the October 31, 2000, hearing at which the sleeping juror was discussed, she complied with I.C. § 19–4903, requiring in part that grounds upon which the application is based be specifically set forth. Murphy acknowledges that a post-

conviction application must typically be accompanied by admissible evidence supporting its allegations, but she relies on the exception for cases where the applicant can identify the location of the evidence in question, but cannot obtain that evidence, for example, because of incarceration and indigency. The exception in I.C. § 19–4903, however, applies only to relevant evidence sufficient to support a claim. The evidence that Murphy bore the burden to produce, concerns the circumstances of the sleeping juror, not Murphy's prior attempt to address that issue in another proceeding. *See State v. Seiber,* 117 Idaho 637, 640, 791 P.2d 18, 21 (Ct.App.1989). Murphy did not identify which day of the five-day jury trial the juror allegedly slept, describe the length of time the juror allegedly slept, or explain what testimony or evidence the juror allegedly slept through. In the absence of such evidence, there was no showing of deficient performance or prejudice. Therefore, it was proper for the court to dismiss this claim.

## IV.

### NOTICE OF GROUNDS FOR DISMISSAL OF OTHER CLAIMS

■ Murphy does not challenge the adequacy of the notice she received regarding dismissal of claims 1, 3, 3A, 3B, 5, 5A, 5B, 7A, 7B, 7C, 7D, 8 and 13F; therefore, those claims are waived on appeal. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). The state concedes that Murphy did not receive adequate notice of the grounds for dismissal of claims 2, 16, 17, 18, 19, 20, 20A, 20B and 21. Furthermore, the district court gave no reason for dismissing claims 9B, 14A, and 22B. Thus, we remand for further proceedings with respect to these twelve claims.

■ Murphy contends that claims 4 and 13A to E were never specifically dismissed, and that the district court gave inadequate notice prior to dismissing claims 11, 22A, 22C and 23. However, we find that the court properly dismissed claims 4, 11, 13A to E and 22C because Murphy was on notice of her failure to show deficient performance of

counsel and/or failure to state a basis for relief per the state's motion for summary dismissal. As to claims 22A and 23, the state contends that these prosecutorial and judicial misconduct claims should have been raised on direct appeal as determined by the district court. The UPCPA

> ... is not a substitute for, nor does it affect any remedy incident to the proceedings in the trial court, or of an appeal from the sentence or conviction. Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings....

I.C. § 19–4901(b). The state failed, however, to allege this basis for dismissal in its motion for summary disposition. Thus, Murphy received inadequate notice for dismissal of these claims. Therefore, claims 22A and 23 are remanded on the district court's failure to give Murphy adequate notice.

### V.

### CONCLUSION

Based on the facts and reasoning set forth above, we hold that the district court erred in summarily dismissing the ineffective assistance of counsel claim relating to trial counsel's failure to hire a pathologist to aid the defense. Murphy is entitled to appointment of or funding to obtain a forensic pathologist to support her claim of ineffective assistance of counsel. The district court erred by summarily dismissing Murphy's claims numbered 2, 6, 9A, 9B, 10, 12, 14A, 16, 17, 18, 19, 20, 20A, 20B, 21, 22A, 22B and 23 without first giving notice of the grounds for dismissal. We affirm the dismissal of claims numbered 1, 3, 3A, 3B, 4, 5, 5A, 5B, 7A, 7B, 7C, 7D, 8, 11, 13A to F, 15 and 22C, as well as Murphy's claims that trial counsel was ineffective for failure to call Norma Jo Robinson to the stand and for failure to pursue dismissal of a juror. We remand for further proceedings consistent with this opinion.

Chief Judge PERRY and Judge LANSING concur.

