**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 40109/41774**

| | | |
|---|---|---|
| JUAN ANTHONY JIMENEZ, | ) | 2015 Unpublished Opinion No. 522 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: June 17, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. James C. Morfitt; Hon. Molly J. Huskey, District Judges.

Judgments of the district court dismissing amended petition for post-conviction relief and amended successive petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

In these consolidated appeals, Juan Anthony Jimenez appeals from the judgment of the district court summarily dismissing his petition for post-conviction relief and from the judgment of the district court summarily dismissing his successive petition for post-conviction relief. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

Underlying these post-conviction relief actions, Jimenez was found guilty of aggravated battery for stabbing a victim at a Caldwell convenience store. This Court affirmed his judgment of conviction and sentence in *State v. Jimenez*, Docket No. 35807 (Ct. App. Jan. 8, 2010) (per curiam) (unpublished). The record reflects that Jimenez and his friend were driven to the convenience store by a female acquaintance, and Jimenez's friend went inside the store.

1

Jimenez's friend returned to the car and asked Jimenez to go inside, and Jimenez and the friend went in the store. Inside, a verbal argument ensued between Jimenez and his friend on one side and the victim and another individual on the other side. At some point, Jimenez's friend slapped the victim's face, and the commotion drew the attention of customers in the store and the cashier. Moreover, the commotion and subsequent events were recorded by the store's surveillance cameras.

Within a matter of seconds, the situation escalated, and Jimenez, it appeared to the customers and cashier, shoved or pushed the victim. Jimenez and his friend exited the store, and the victim exclaimed that he had been stabbed or shanked. One of the customers read off the license plate of the car that Jimenez and his friend returned to. Another customer, who was outside the store, watched the car pull out of the store's parking lot and proceed down the street. This customer was also able to follow the vehicle for a time. The car carrying Jimenez was eventually pulled over, and Jimenez was arrested and transported to the Caldwell City Police Department. Although officers did not find a knife on Jimenez or in the car, an officer preparing to place Jimenez in the holding cell noticed that Jimenez's shoes had red stains on them. The next day, a Caldwell City Police Department detective followed the route of the car carrying Jimenez to search for a knife. Less than a quarter mile away from the convenience store, the detective located a folding knife alongside the roadway with red stains. Jimenez was charged with aggravated battery and the case proceeded to trial.

At trial, the State presented testimony from customers, the cashier, law enforcement, and a criminalist, and also played surveillance video clips to the jury. The criminalist testified that both the shoes and knife had human blood on them, but she did not identify whose blood it was. In closing argument, the prosecutor suggested that the blood on the shoes came from the victim. Defense counsel reiterated to the jury that there was no evidence as to the source of the blood. Nonetheless, the jury found Jimenez guilty of aggravated battery.

After this Court affirmed Jimenez's judgment of conviction and sentence, Jimenez filed a pro se petition for post-conviction relief and also moved the court to appoint counsel. After counsel was appointed, Jimenez filed an amended petition, alleging various claims of ineffective assistance of defense counsel. Jimenez also filed a motion with the district court, seeking an order directing that his shoes and the victim's shirt, which were retained by the police, be sent to the Idaho State Police forensic lab for DNA testing. Following a hearing, the district court

2

denied the motion for DNA testing, and the State later moved to summarily dismiss the amended petition for post-conviction relief. After a hearing, the court summarily dismissed the petition, and Jimenez appealed.

While the appeal of Jimenez's original petition for post-conviction relief was pending, Jimenez filed a pro se successive petition for post-conviction relief and moved for the appointment of counsel. After counsel was appointed, Jimenez filed an amended successive petition, alleging three claims of ineffective assistance of defense counsel. Subsequently, the State moved to summarily dismiss the amended successive petition, and the court entered an order summarily dismissing the successive petition. Jimenez appealed from the dismissal of his amended successive petition, and this Court consolidated the appeals.

## II.

## ANALYSIS

On appeal, Jimenez argues that the district court erred by summarily dismissing his amended petition for post-conviction relief. Jimenez also contends that the district court erred by summarily dismissing his amended successive petition for post-conviction relief.

Idaho Code section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of a petition pursuant to I.C. § 19-4906 is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. A claim for post-conviction relief will be subject to summary dismissal if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims upon which the petitioner bears the burden of proof. *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal is permissible when the petitioner's evidence has raised no genuine issue of material fact that, if resolved in the petitioner's favor, would entitle the petitioner to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002). Summary dismissal of a petition for post-conviction relief may be appropriate, however, even where the State does not controvert the petitioner's evidence because the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

3

Because this appeal involves claims of ineffective assistance, we note that a claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

A.      **Petition for Post-conviction Relief**

Jimenez contends that the district court erred by summarily dismissing his amended petition for post-conviction relief. Specifically, Jimenez asserts that the court erred by denying his motion for DNA testing and by summarily dismissing his ineffective assistance of defense counsel claims.

1.      **Motion for DNA testing**

Jimenez argues that the district court erred by denying his motion for DNA testing. The district court construed the motion as a petition for DNA testing under I.C. § 19-4902(b). It found that Jimenez had not made a prima face case of the elements required in I.C. § 19-4902(c) for a post-conviction petition for DNA testing, and thus denied the motion.

On appeal, Jimenez asserts that his motion for DNA testing was not a petition for DNA testing, but was a discovery motion asking the court to order the testing of the blood on the shoes. Therefore, Jimenez contends that the district court abused its discretion by denying the motion for DNA testing when it treated the motion as a petition. The State, however, asserts that the issue is moot because Jimenez obtained DNA testing of the shoes in a separate federal

4

action.[1]  In reply, Jimenez maintains that the court's denial of the motion deprived Jimenez of "the opportunity to have the DNA evidence considered in his initial post-conviction action."

We begin by assuming that Jimenez's motion was actually a discovery motion.  Although post-conviction proceedings are civil in nature, the discovery rules in the Idaho Rules of Civil Procedure do not apply.  Idaho Criminal Rule 57(b); *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (2001).  The decision to authorize discovery is left to the discretion of the district court.  *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927.  The district court is not required to order discovery, unless discovery is necessary to protect a petitioner's substantial rights.  *Id.*

As the State correctly argues, DNA testing of the shoes has already been completed and this purpose of the motion for DNA testing is now moot because judicial relief from this Court would not resolve a real and substantial controversy.  *See Dunlap v. State*, 141 Idaho 50, 62, 106 P.3d 376, 388 (2004) ("Generally, an issue is moot if it does not present a real and substantial controversy capable of being concluded through a judicial decree of specific relief.").   This conclusion does not end our inquiry, however, because Jimenez asserts his motion for DNA testing should have been granted in order for the court to consider his claim that defense counsel provided ineffective assistance by not requesting DNA testing on the shoes.

As this Court concluded in *Murphy v. State*, 143 Idaho 139, 149, 139 P.3d 741, 751 (Ct. App. 2006), a discovery motion may need to be granted to protect a petitioner's substantial right to effective assistance.  When considering whether a district court abused its discretion by denying or not ruling on a discovery motion prior to the summary dismissal of a petition, this Court and the Idaho Supreme Court have examined the claims in the petition to determine whether the discovery motion should have been granted.

For instance, before the Idaho Supreme Court, Raudebaugh argued that discovery should have been authorized, even though the district court did not rule on his motion below and later summarily dismissed his petition.  *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927.  The Court noted that Raudebaugh's prejudice allegations were speculative, and thus the Court held that there was no harm in the district court summarily dismissing the petition without authorizing the requested discovery.  *Id.*  In contrast, when Murphy challenged the district court's denial of her

---

[1]     According to an FBI laboratory report, the victim was not the source of the DNA obtained from the shoes.  However, that same report found that the victim was the source of the DNA obtained from the knife and from stains on Jimenez's pants.

discovery motion, this Court held that Murphy's allegations of prejudice were not speculative, but raised "serious questions on the reliability" of the State's expert witness's "opinion concerning the manner of death that can only be addressed by an expert interpreting all the relevant facts and reports produced on this question." *Murphy*, 143 Idaho at 149, 139 P.3d at 751. Thus, because the allegations of prejudice raised serious questions, we explained that Murphy's discovery request should have been granted and that the district court erred by summarily dismissing the claim without first granting Murphy the opportunity to retain a forensic pathologist, as she requested in her discovery motion. *Id.*

In this case, DNA testing would have been potentially relevant to the prejudice prong of Jimenez's ineffective assistance of defense counsel claim. However, we are not persuaded that DNA testing was necessary to protect Jimenez's substantial right to effective assistance. As we discuss below, Jimenez did not make a prima facie showing of prejudice with respect to defense counsel not obtaining DNA testing. Rather, there is overwhelming evidence to conclude that the victim was stabbed by Jimenez, and the DNA testing would not have exculpated Jimenez from the crime, even though it would have shown that the victim's blood was not on Jimenez's shoes. Thus, we conclude that the district court did not abuse its discretion by denying the motion for DNA testing before summarily dismissing the petition.

## 2. Ineffective assistance of defense counsel claims

Jimenez argues that the district court erred by summarily dismissing his claims of ineffective assistance of defense counsel. In his amended petition, Jimenez contended that defense counsel provided ineffective assistance by: (a) not requesting DNA testing of the blood found on Jimenez's shoes; (b) not objecting to blood test evidence presented by the State; (c) not adequately preparing Jimenez for cross-examination; (d) not providing Jimenez with an opportunity to adequately view the surveillance video; and (e) not requesting a lesser-included offense jury instruction. We address these claims in turn.

### a. DNA testing

In his amended petition, Jimenez asserted that defense counsel provided ineffective assistance by not requesting DNA testing of the blood on Jimenez's shoes. In his affidavit, Jimenez implied that the blood was from a fight he had with a third party before the incident at the convenience store. The district court determined that Jimenez did not demonstrate that the State possessed any bodily substance from the victim which could be tested for DNA (to

compare to the shoes) and further found that DNA testing would not exclude Jimenez as the perpetrator of the crime. Thus, the district court concluded that Jimenez had not demonstrated either deficient performance or prejudice. On appeal, Jimenez argues that the shoes were available for testing along with the victim's blood-stained shirt. Furthermore, Jimenez contends that he was prejudiced by the lack of DNA testing because the State not only introduced the shoes into evidence but also argued their significance during closing argument.

We begin by examining the prejudice prong of Jimenez's ineffective assistance of counsel claim. *See Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (addressing the prejudice prong without considering whether counsel was deficient). In order to make a prima facie case of prejudice, Jimenez bore the burden of providing admissible evidence leading to a reasonable probability that the outcome of the trial would have been different had defense counsel requested DNA testing on the shoes. But here, the evidence of Jimenez's guilt is overwhelming, and Jimenez has not made a prima facie showing that there is a reasonable probability that the outcome of the trial would have been different had defense counsel requested DNA testing.

In the underlying criminal trial, four witnesses who were at the convenience store testified. One, a male customer in the store, "heard some jostling going on" and turned and saw the victim with a bloody nose. He then saw Jimenez shove the victim, or what he thought was a shove, into a sunglass display and saw Jimenez and his friend leave. "And at that point, the [victim] lifted up his shirt and said something to the effect of 'I've been stabbed' or 'I've been shanked.'"

The convenience store cashier testified he heard a commotion, turned around, and "witnessed a push and the sunglass display had shook." The cashier asked the victim what happened and the victim said, "I got shanked. I got shanked." The cashier then noticed blood on the floor. When asked to describe the push, the cashier explained that it was a "one handed [push] into the stomach area" and stated, "It looked like a normal aggressive push, or a one-arm push. It looked like--you know, just like to the abdomen area." Jimenez himself testified at the trial and acknowledged that he had pushed the victim, but contended he did not stab the victim.

A female customer in the store was waiting in line when she heard a slapping or smacking sound. She turned and saw Jimenez shove the victim with one hand into a sunglass display. She also observed the victim's stab wound after the victim pulled his shirt off. The

7

female customer's fiancé was outside of the store, waiting for the female customer to prepay for fuel. He testified that the female customer came out of the store and said there was a stabbing and that the car leaving had Jimenez in it. He saw the car carrying Jimenez leave the store and proceed down the road past a nearby fire station; he then followed the car for a time.

A Caldwell City Police Department patrol corporal arrived at the convenience store and viewed a surveillance video. The patrol corporal saw Jimenez in the video turn and lean in toward the victim and "kind of pull[] with, like, almost with one arm like this towards him. Almost like he was giving him [the victim] a one-arm hug." The next day, a detective walked the path of the vehicle carrying Jimenez because a knife had not been located on Jimenez or in the car carrying him. Past the fire station and less than a quarter mile from the store, the detective located a folding knife with red stains, later confirmed to be blood stains.

In short, overwhelming circumstantial evidence from witnesses and from the surveillance video showed that Jimenez stabbed the victim. In spite of the overwhelming evidence of Jimenez's guilt, Jimenez maintains that he was prejudiced by defense counsel not requesting DNA testing because the prosecutor referenced the blood stains on top of Jimenez's shoes in closing argument. Even though the prosecutor may have implied that the shoes had blood on them from the victim, defense counsel reiterated to the jury that the source of the blood was unknown. But even accounting for the fact that the prosecutor would not have been able to imply that the blood on the shoes was from the victim, Jimenez has not made a prima facie showing of a reasonable probability that the outcome of the trial would have been different had defense counsel requested DNA testing. Accordingly, the claim was subject to summary dismissal.

### b. Blood test evidence

In his amended petition, Jimenez argued that defense counsel provided ineffective assistance by not objecting to blood test evidence presented by the State. Specifically, Jimenez averred in his affidavit that defense counsel did not object to the admission of blood test evidence concerning the blood on Jimenez's shoes being human despite the fact "the witness testified that she was not certified in that area and that the test was a fairly new test, similar to a home pregnancy test, and that the evidence was never sent to a laboratory for further testing." On appeal, Jimenez now argues that defense counsel "should have objected to the criminologist's

testimony as irrelevant and that any relevance was outweighed by the danger of unfair prejudice."

As the State correctly asserts in its brief, Jimenez's claim on appeal is not the claim raised in the amended petition or considered by the district court. In particular, the claim raised below asserts that counsel should have objected to the lack of foundation for the blood test evidence, whereas the claim argued on appeal asserts that counsel should have objected to the relevance of the evidence. Because the claim argued on appeal is not the claim that was raised before or decided by the district court, this Court will not consider the claim raised for the first time on appeal. *Joyner v. State*, 156 Idaho 223, 230, 322 P.3d 305, 312 (Ct. App. 2014) ("Generally, issues not raised below may not be considered for the first time on appeal.").

### c. Cross-examination

Jimenez also argued in his amended petition that defense counsel did not adequately prepare him for cross-examination. The district court dismissed the claim after reviewing the transcript, finding that Jimenez "was not asked any trick questions nor was he pressed hard by the State on cross-examination" and finding that Jimenez's answers were evasive. The district court further noted that Jimenez did not show how counsel could have improved Jimenez's memory. On appeal, Jimenez argues that had counsel prepared him, "the details would have been fresher in his mind and he would not have seemed as evasive." The State maintains that Jimenez has not shown how counsel was to determine the questions that were eventually asked by the prosecutor or what counsel might have done to improve Jimenez's memory.

Here, the trial transcript reveals that on direct examination, Jimenez testified to the events leading up to incident at the convenience store, what occurred at the convenience store, and what happened after he left the convenience store. On cross-examination, the prosecutor asked Jimenez more-detailed questions. Although Jimenez was uncertain about certain details of the events leading up to the convenience store, Jimenez recalled what happened at the convenience store--Jimenez even remembered which aisle contained the snack food that he picked up before confronting the victim. Though Jimenez asserted in his amended petition that counsel did not adequately prepare him for cross-examination, the record does not support this assertion; therefore, Jimenez has not made a prima facie showing of deficient performance. But even if defense counsel had spent more time "preparing" Jimenez for trial and Jimenez provided more-detailed testimony, Jimenez did not make a prima facie showing of a reasonable probability that

9

the outcome of the trial would have been different. Thus, because Jimenez did not demonstrate a prima facie case of deficient performance or prejudice, this claim was subject to summary dismissal.

### d.     Surveillance video

In his amended petition, Jimenez argued that defense counsel did not adequately show the surveillance video to Jimenez because counsel "would only show [the] video on a laptop computer which was obscured by the glass partition in the visiting room." In his affidavit, Jimenez explained that defense counsel "did not let me review the DVD in a separate attorney room." The district court found that Jimenez did not present evidence that he requested a separate room or that such a room even existed or was available to his attorney. The district court also noted that Jimenez had not demonstrated prejudice. On appeal, Jimenez asserts that this Court may infer from the record that Jimenez requested a separate room and that he was prejudiced because he was unable to answer questions about the video. The State maintains that Jimenez did not demonstrate that he told his attorney that he had problems seeing the video or that his attorney might have secured a better viewing room.

For this claim, Jimenez has not made a prima facie showing of either deficient performance or prejudice. Here, Jimenez did not demonstrate that his attorney knew that he could not adequately view the surveillance video, did not claim that he asked his attorney to show the video to him in another room, and did not show that a separate room was available to his attorney to display the surveillance video. Moreover, even if Jimenez had seen the video in a different room, it is not apparent how his testimony would have changed or that his testimony about the video would lead to a reasonable probability that the outcome of the trial would have been different. Accordingly, because Jimenez did not make a prima facie case of deficient performance or prejudice, this claim was subject to summary dismissal.

### e.     Lesser-included offense jury instruction

Finally, Jimenez contended in his amended petition that defense counsel provided ineffective assistance by not requesting a lesser-included offense jury instruction for simple battery. Although finding that a reasonable view of the evidence would have supported the jury instruction, the district court apparently found that the decision not to request the jury instruction was tactical and then determined that there was no evidence showing that counsel's decision was based on inadequate preparation, ignorance of the relative law, or other shortcomings. The

district court also found that Jimenez did not demonstrate prejudice because the jury would not have had occasion to consider the lesser-included offense. On appeal, Jimenez argues that the decision to not request the jury instruction "was apparently made without discussion with Mr. Jimenez and, thus, was based on inadequate preparation." The State maintains that Jimenez did not demonstrate deficient performance or prejudice.

Here, Jimenez did not make a prima facie showing of either deficient performance or prejudice. As this Court has recognized, counsel may make a tactical decision not to request a lesser-included offense jury instruction. *Yon v. State*, 124 Idaho 821, 823, 864 P.2d 659, 661 (Ct. App. 1993). Based on the record, counsel's decision in this case was likely a tactical decision. *See id.* ("It appears instead that this was a tactical decision designed to secure a full acquittal, instead of allowing the jury to find Yon guilty of a lesser included offense. Defense counsel's strategy is one that is available and is utilized in many criminal cases."). Although Jimenez remarks in his appellate brief that defense counsel did not speak to him about this decision, neither the amended petition nor the affidavit contain support for this statement, and Jimenez's appellate brief does not contain a citation to the record that supports this assertion. Therefore, Jimenez has not demonstrated deficient performance. Moreover, Jimenez has not demonstrated prejudice, because the failure to give a lesser-included offense jury instruction is harmless, as appellate courts presume that a jury follows the acquittal first instruction, and thus the jury would not have considered the lesser-included offense. *State v. Joy*, 155 Idaho 1, 7, 304 P.3d 276, 282 (2013) (adopting the acquittal-first rule set forth by this Court). Therefore, this claim was subject to summary dismissal.

## B.     Successive Petition for Post-conviction Relief

Jimenez also argues that the district court erred by summarily dismissing his amended successive petition. In his successive petition, Jimenez asserted that defense counsel provided ineffective assistance by (a) not requesting DNA testing of Jimenez's shoes, (b) not investigating the third party with whom Jimenez asserted he was in a fight, and (c) not objecting to the admission of Jimenez's shoes into evidence. The district court dismissed the claims in the successive petition on three alternative bases. The court found that the claims were untimely, but also found that Jimenez did not provide sufficient reason why the claims were not asserted or were inadequately raised in the original petition. The Court further determined that there was no genuine issue of material fact and that the State was entitled to judgment as a matter of law.

11

Without addressing the timeliness of the claims in the successive petition and without considering whether Jimenez asserted sufficient reason for why he did not assert each claim in the original petition--although we analyzed the first claim above and the second claim was raised in the amended petition--we turn to the district court's last basis for dismissing the claims. For each of the claims, Jimenez did not demonstrate a prima facie case of prejudice. As discussed above, there was overwhelming evidence of Jimenez's guilt; thus, even if defense counsel had requested DNA testing of Jimenez's shoes, had investigated the third party, and had objected to the admission of Jimenez's shoes into evidence, Jimenez has not made a prima facie showing of a reasonable probability that the outcome of the trial would have been different. Accordingly, the claims were subject to summary dismissal.

## III.

## CONCLUSION

The district court did not abuse its discretion by denying Jimenez's motion for DNA testing, and the district court correctly summarily dismissed the amended petition for post-conviction relief. The district court also correctly summarily dismissed the amended successive petition for post-conviction relief. Accordingly, the district court's judgments dismissing the amended petition and the amended successive petition are affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.