# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42920

| | | |
|---|---|---|
| CLAYTON ROBERT ADAMS, | ) | 2016 Opinion No. 69 |
| | ) | |
| Petitioner-Appellant, | ) | Filed:  November 4, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Renae J. Hoff, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>; order denying motion for reconsideration, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Dennis A. Benjamin, Boise, for appellant.  Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.  John C. McKinney argued.

---

MELANSON, Chief Judge

Clayton Robert Adams appeals from the district court's judgment summarily dismissing Adams's petition for post-conviction relief and the district court's order denying Adams's motion for reconsideration.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Adams was driving a motor vehicle with four male passengers when Adams and the three backseat passengers became involved in an argument.  An altercation ensued after Adams abruptly stopped the vehicle and the three backseat passengers exited the vehicle.  It was alleged that, during the altercation, Adams stabbed two of the men, the second of whom later died from his injuries.  Adams was charged with first degree premeditated murder or, in the alternative,

1

first degree felony murder; three counts of attempted robbery; and one count of aggravated battery. At trial, Adams testified that the surviving victim and the deceased victim were the aggressors and had attacked Adams. Adams asserted that he used a knife in self-defense.

A jury acquitted Adams of first degree murder and attempted robbery. However, the jury found Adams guilty of the lesser offense of second degree murder, I.C. §§ 18-4001 and 18-4003(g), and guilty of aggravated battery, I.C. § 18-907. The district court imposed a unified life sentence, with a minimum term of confinement of twenty-five years, for second degree murder and a consecutive ten-year sentence, with a minimum term of confinement of three years, for aggravated battery. Adams filed an I.C.R. 35 motion for reduction of his sentences, which the district court denied. On direct appeal, this Court affirmed Adams's judgment of conviction and sentences. *State v. Adams*, 147 Idaho 857, 216 P.3d 146 (Ct. App. 2009). Adams subsequently filed a pro se petition for post-conviction relief and filed an amended petition raising numerous causes of action. Adams filed a motion for investigative services to locate two witnesses, which the district court denied. The district court issued an order summarily dismissing Adams's petition for post-conviction relief.[1] Adams filed a motion for reconsideration, which the district court denied. Adams appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*,

---

[1] The district court, however, granted relief on two of Adams's post-conviction allegations and afforded him a new sentencing hearing for the second degree murder. At resentencing, the district court again imposed a unified life sentence, with a minimum period of confinement of twenty-five years. Adams appealed, and in an unpublished opinion, this Court affirmed. *State v. Adams*, Docket No. 42667 (Ct. App. Aug. 11, 2015). Neither the district court's grant of relief or resentencing are at issue on appeal here.

141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in

3

the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the state does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

On appeal, Adams argues the district court erred in summarily dismissing his petition for post-conviction relief. Specifically, Adams claims the district court abused its discretion in denying Adams's motion for investigative services to locate two witnesses. Adams also alleges trial counsel was ineffective and that the cumulative effect of trial counsel's deficient performances denied Adams of his Sixth Amendment right to counsel. Finally, Adams argues the district court erred in denying Adams's motion for reconsideration of the order summarily dismissing his petition.

### A.     Investigative Services

Adams argues that the district court abused its discretion in denying Adams's motion for investigative services. In his petition for post-conviction relief, Adams raised a claim of ineffective assistance of trial counsel for failing to investigate and call two witnesses in Adams's defense at trial. Adams contends that these witnesses would have undermined the State's theory of events and supported Adams's testimony that he acted in self-defense.

4

By way of deposition, trial counsel testified that he had no recollection of either witness. Adams also asserted that he did not have access to trial counsel's working file[2] to clarify whether the witnesses had been contacted and questioned. Consequently, Adams filed a motion for investigative services, arguing that an investigator was necessary in order to find the witnesses and question them about the events on the night of the altercation and whether they had been contacted by trial counsel. Adams asserted that such information would substantiate his claim and aid in responding to the State's motion for summary dismissal.

The district court held a hearing on Adams's motion and found:

> The issue of these two witnesses was raised in the amended petition filed back in June of 2012. And counsel for [Adams] states today she's been unable to locate these people. But it has been two years. And here we are on the eve of the State noticing up their motion. And I get this responding matter that an [investigator is] needed to locate the witnesses. Other than what counsel says today, it was not detailed as to what had been undertaken to locate the witnesses.
>
> I don't find good cause for delay at this point in time. We've been trying to put this case--or get this matter heard for years now. And I don't see a real justification to delay this matter. I want to move forward on the matter of summary judgment.

The district court denied Adams's motion. On appeal, Adams argues that the district court was not acting consistently with the applicable legal standards when it failed to consider the prejudicial effects the denial of Adams's motion would have on his substantive rights.

Idaho Code Section 19-4904 provides:

> If the applicant is unable to pay court costs and expenses of representation, including stenographic, printing, witness fees and expenses, and legal services, these costs and expenses, and a court-appointed attorney may be made available to the applicant in the preparation of the application, in the trial court, and on appeal, and paid, on order of the district court, by the county in which the application is filed.

A request under I.C. § 19-4904 for funds to retain an expert may be viewed as analogous to a request for discovery in a post-conviction action. *Murphy v. State*, 143 Idaho 139, 148, 139 P.3d 741, 750 (Ct. App. 2006). When a petitioner believes discovery is necessary for acquisition of evidence to support a claim for post-conviction relief, the petitioner must obtain authorization from the district court to conduct discovery. I.C.R. 57(b); *Raudebaugh v. State*, 135 Idaho 602,

---

[2]     Apparently, the client file has been lost.

5

605, 21 P.3d 924, 927 (2001). Discovery in a post-conviction action is not required unless necessary to protect a petitioner's substantial rights. *Murphy*, 143 Idaho at 148, 139 P.3d at 750; *Griffith v. State*, 121 Idaho 371, 375, 825 P.2d 94, 98 (Ct. App. 1992). Discovery may be denied where the petitioner's claims are nothing more than speculation, unsupported by any evidence. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Indeed, discovery may not be used to engage in "fishing expeditions," as post-conviction actions provide a forum for known grievances, not an opportunity to search for them. *Murphy*, 143 Idaho at 148, 139 P.3d at 750.

Whether to authorize discovery is a matter directed to the discretion of the court. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion; acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The issue on appeal is whether the district court acted consistently with the applicable legal standards when it denied Adams's motion as being unsupported and untimely.

Although the district court did not specifically discuss on the record the impact of its ruling on Adams's substantial rights, we note that the district court expressly found no "good cause" or "justification" to delay the proceedings further. However, even presuming that the district court's reference to "good cause" or "justification" did not implicitly contemplate Adams's substantial rights, the district court had the discretion to consider the foundation and timeliness of Adams's motion. Post-conviction motions for discovery and, by analogy, motions for funds to hire experts are subject to the supervision and firm control of the trial courts to prevent abuses. *Murphy*, 143 Idaho at 148, 139 P.3d at 750 (requests under I.C. § 19-4904 for funds are viewed as analogous to a request for discovery in a post-conviction action); *see* I.C.R. 57(b) (providing that the provisions for discovery shall not apply to the proceedings unless and only to the extent ordered by the trial court); *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (holding that trial courts require a great deal of latitude in scheduling trials and this burden counsels against continuances except for compelling reasons); *United States v. Harp*, 282 F. App'x 774, 776 (11th Cir. 2008) (trial courts are not required to grant an eleventh-hour

6

request for expert services, particularly where the delay in making the request is unjustified and would require continuance of trial); *Christian v. Rhode*, 41 F.3d 461, 470 (9th Cir. 1994) (upholding denial of untimely motion for discovery because party failed to explain the delay); *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995) (upholding denial of motion to continue based on late discovery of evidence because party was unable to show that tardiness of disclosure resulted in prejudice--specifically what methods might have been used or what additional evidence could have been established with the extra time); *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995) (holding that, when trial courts consider motions which may cause delay in the proceedings, the timing of the motion, length of the delay, and whether the delay is an attempt to manipulate proceedings are relevant factors in the trial court's consideration).

Prior to the status hearing on Adams's motion for investigative services, Adams had long been on notice that the two witnesses' alleged testimonies would be at issue and that contact with the witnesses would be necessary to support his claim. Specifically, Adams's claim concerning trial counsel's failure to call the two witnesses was initially alleged in Adams's 2010 pro se petition. In an August 2011 deposition, Adams questioned trial counsel concerning the two witnesses and trial counsel stated that he did not recall either witness. In 2012, Adams again asserted his claim that trial counsel had been ineffective for failing to call the two witnesses. Adams did not move to obtain funds to hire an investigator for the purpose of locating the two witnesses until June 2014--just prior to the summary dismissal stage of the proceedings.

At the hearing on his motion, Adams declared in a conclusory fashion that he had limited resources and was unable to find the witnesses. Adams provided no justification for his delayed motion so late in the proceedings. In addition, Adams did not provide any foundation or explanation as to why his limited resources kept him from locating the two witnesses, especially given that, as Adams notes on appeal, both witnesses appeared to live in the local area. Additionally, Adams made no showing of what efforts had been made to locate the two witnesses in the years leading up to his motion. Based on the information presented at the time of the hearing, the district court exercised its discretion to control the proceedings, found that Adams's motion would cause an unjustified delay, and considered it untimely.

7

Adams argues that the district court's timeliness concerns were unfounded because the hearing on the State's motion for summary dismissal could not be held for thirteen days after the district court denied Adams's motion for investigative services. Adams speculates that the investigator likely could have found the two witnesses within that time, especially as it appeared that the both witnesses lived locally. The district court ruled on Adams's motion finding that Adams had failed to present the district court any details about the witnesses, their locations, or Adams's efforts to locate them. Based on the limited information provided by Adams, the district court was within its discretion to find that Adams's motion would have caused undue delay to the proceedings.

Adams has failed to show that the district court engaged in reversible error or otherwise failed to act consistently with applicable legal standards. Accordingly, the district court did not err in denying Adams's motion for investigative funds.

## B.     Ineffective Assistance of Counsel

Adams claims that his trial counsel was ineffective on multiple grounds and that the district court's summary dismissal of Adam's post-conviction claims was erroneous. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

### 1. Paramedic testimony

Adams argues that the district court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to object to a paramedic's testimony that the surviving victim suffered a stab wound. At trial, the State called a paramedic, who had been dispatched to the scene of the altercation, to testify about the wounds sustained by both the deceased and surviving victims. Concerning the surviving victim, the State introduced a photograph of the surviving victim's wound. The State elicited the following testimony from the paramedic regarding the photograph:

Q.    Is that what you saw?
A.    Yeah. I could see the top laceration portion, the wider part. That below that where the oozing was just appeared to be blood at that point. So as far as--because right here, that looks like--that looks different from when I saw it.
      . . . .
Q.    . . . . Can you use [the laser pointer] to illustrate what you just testified to?
A.    Yes. That laceration right there was there. That's the one I'm speaking of that I recall. And this all area was just the oozing blood, so that looks like the remnants of the blood stain, and it looks like it's up there in his arm here and up on his armpit there too, but I can't say for sure that's what that is. That just
Q.    But you believe its appearance is consistent with a blood stain?
A.    Right, like where he was bleeding and his arm had been--
Q.    Was he wearing a shirt when you were--
A.    They had taken that off of him. They told me the police had taken that off of him when they took his coat off.
Q.    And, . . . is that wound consistent with what you've seen of stab wounds in the past?
A.    Yes.
Q.    And do you believe that to be a stab wound?
A.    Yes.

Adams asserts that trial counsel was ineffective because he did not object to the paramedic offering opinion testimony that the surviving victim's wound was a stab wound. Adams claimed that such testimony was inadmissible because the paramedic was not qualified to testify as an expert witness. Adams further argued that he was prejudiced because, by not objecting to the paramedic's testimony, trial counsel effectively conceded that the victim was stabbed with a knife. He contends that this was especially prejudicial where the State did not

have other witnesses who testified that the surviving victim sustained a stab wound.[3]   At the

hearing on the State's motion for summary dismissal, the district court found:

> I had to go back and look at [I.R.E.] 702 again.  The requirements are not technical.  I often have people who don't have any particular education, but have experience in the world in areas that the rest of us don't who have expertise.
>
> I have had people come in with very little education who are very learned in the training of wolves, in growing of grass and pastures, these types of things. And they technically are qualified as experts because they have skill and knowledge, specialized skills that might assist the trier of fact.
>
> In this case, since she was a paramedic who testified she had had experience, she did have certain qualifications.  So if an objection had been made, then the state would have either had to lay a foundation with her which would have emphasized that evidence if they then turned around and got her qualified as a witness, or if they didn't, it would have emphasized her, but then I'm sure they would have brought in one of the other witnesses on the list.
>
> So, again, I think this falls in the realm of trial tactics and second guessing such tactics is not the role of this Court.  Accordingly, I will grant summary dismissal.

Trial counsel's lack of objection to testimony falls within the area of tactical or strategic

decisions.  *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994); *Cook v. State*, 157

Idaho 775, 778, 339 P.3d 1179, 1182 (Ct. App. 2014).  Thus, trial counsel's decision not to

object may not be second-guessed unless Adams can show that the decision was based on

inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective

evaluation.  *See Cook*, 157 Idaho at 778, 339 P.3d at 1182.  In this case, there has been no

allegation or evidence of inadequate preparation or ignorance of the law as related to the

paramedic's testimony.  Instead, Adams contends that the district court's finding was not

supported by the evidence and was reached by failing to apply the proper legal standard--to view

the evidence in the light most favorable to Adams.

Effective legal representation does not require that an attorney object to admissible

evidence.  *Id*.  Indeed, if evidence is arguably admissible and the trial court could have properly

allowed the evidence even if counsel had objected, trial counsel's performance generally will not

---

[3]     The surviving victim testified that he was struck by Adams as he was exiting the vehicle and did not initially realize he had been stabbed.  On appeal, Adams suggests that the puncture wound suffered by the surviving victim could have come from another object at the scene, thus creating doubt about the State's theory of the case and thereby bolstering Adams's claim of self-defense.

be objectively deficient. *Id.*; *see also State v. Higgins*, 122 Idaho 590, 602-03, 836 P.2d 536, 548-49 (1992) (noting that many of trial counsel's alleged errors in failing to object involved evidence that was arguably admissible and that the decision not to object may have reflected a conscious trial strategy to avoid frequent overruling by the judge and annoyance of the jury). Thus, the standard for deficient performance when dealing with a failure to object is not whether the testimony could have been excluded, but whether the testimony could have been properly admitted. *Cook*, 157 Idaho at 778, 339 P.3d at 1182. Failing to object to arguably inadmissible testimony will generally be insufficient to overcome the presumption that the decision was based on sound legal strategy. *Id.*; *see also Storm v. State*, 112 Idaho 718, 722, 735 P.2d 1029, 1033 (1987) (rejecting petitioner's allegations of ineffective assistance of trial counsel for failing to object to allegedly inadmissible statements because there was no allegation or evidence that the attorney was ignorant of the law or inadequately prepared concerning the issue). If the testimony could not have been properly admitted, then it can be reasonably inferred, absent evidence to the contrary, that the attorney's failure to object was the product of ignorance of the relevant law governing admissibility of the testimony. *Cook*, 157 Idaho at 778-79, 339 P.3d at 1182-83. Accordingly, in order to determine if counsel's failure to object fell below an objectively reasonable standard of performance, we must first determine whether the testimony could have properly been admitted without error by the trial court. *Id.* at 779, 339 P.3d at 1183; *see also State v. Roles*, 122 Idaho 138, 146, 832 P.2d 311, 319 (Ct. App. 1992) (holding that trial counsel's failure to object to admission of evidence could not be ineffective representation because the testimony was admissible).

At issue on appeal is the paramedic's testimony that the surviving victim's wound was a stab wound. Opinion evidence may be admissible under I.R.E. 702, which provides that testimony of qualified expert witnesses may be admitted if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.

The paramedic, at the time of her testimony, had worked as a paramedic in Idaho for three years and had previously worked in emergency medical services in Utah for six years. The paramedic testified that she had graduated from a specialized school qualifying her to be a paramedic and provide emergency care for injured persons. The paramedic's testimony

indicated that she had observed and treated several stab wounds in the past in her role as a paramedic. Notably, the paramedic testified about stab wounds on the deceased victim as well as the surviving victim. As part of her testimony, the paramedic detailed how stab wounds differentiated from cuts caused by other objects. The paramedic testified that she had observed various stab wounds on the deceased victim and described the appearance of the wounds as being consistent with a cut caused by a knife.[4] When the paramedic testified concerning the surviving victim's wound, the State introduced a photograph of the surviving victim's wound and the paramedic confirmed that the photo is what she saw on the surviving victim. The paramedic detailed the nature of the wound she observed and testified that she believed it to be a stab wound because it was consistent with other stab wounds she had observed in the past.

Based on the record, we conclude that there was sufficient foundation to qualify the paramedic as an expert witness under I.R.E. 702, and therefore her testimony concerning the surviving victim's wound was admissible. Consequently, Adams has failed to show that trial counsel's failure to object to the paramedic's testimony was not based on trial strategy.[5] Accordingly, the district court did not err in summarily dismissing Adams's claim of ineffective assistance of trial counsel for failing to object to the paramedic's testimony concerning the nature of the surviving victim's wound.

### 2. DNA testing

Adams argues that the district court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to seek independent pretrial DNA testing of the deceased victim's clothing to impeach the State's allegation that Adams stabbed the surviving victim. Based on testimony and evidence offered at trial, it was alleged that, while Adams was driving the vehicle, he threatened the three backseat passengers when they would not give Adams money. Upon stopping the vehicle, the three backseat passengers exited the vehicle. Adams allegedly stabbed the surviving victim as he was exiting the vehicle and fleeing the area.

---

[4]     On appeal, Adams does not challenge trial counsel's failure to object to the paramedic's testimony that she saw multiple stab wounds on the deceased victim.

[5]     Because we conclude that trial counsel's failure to object to the paramedic's testimony was strategic, we need not address Adams's additional arguments relating to prejudice.

Subsequently, Adams became engaged in a physical fight with the deceased victim and stabbed him five times. The third passenger testified that he had fled the area but looked back to see Adams and the deceased victim engaged in the fight. Adams testified that the surviving victim had initially attacked Adams and was then joined by the deceased victim. Adams testified that he then used his knife in self-defense. A forensic scientist testified at trial that DNA analysis conducted on the knife used by Adams in the altercation revealed a definitive DNA match only to the deceased victim and not to the surviving victim.[6]

In seeking post-conviction relief, Adams alleged that, given the pretrial knife DNA results and the State's theory that the surviving victim had been stabbed first and the deceased victim second, trial counsel should have sought DNA testing of the deceased victim's clothing to determine if the DNA had been transferred from the surviving victim to the deceased victim's clothing. Adams's contention was that the additional DNA analysis could have produced evidence that supported Adams's self-defense theory and cast doubt on the State's version of events, thereby creating the necessary reasonable doubt needed to acquit Adams.

During the pendency of the post-conviction case, Adams moved for additional DNA testing on the deceased victim's clothing, which the district court granted. Specifically, the district court granted additional DNA testing on the "presumed knife wound entrance holes in [the deceased victim's] clothing." The district court ordered that such testing be compared with previously processed DNA from the surviving victim to determine if there had been any transfer of the surviving victim's DNA to the deceased victim's clothing. Forensic testing was conducted on the provided samples--two swabs from the deceased victim's shirt and two swabs from his jacket. The results indicated that the deceased victim was the only source of the DNA present in the samples. Based on these results, Adams argued that summary dismissal of his claim was inappropriate because the absence of DNA transference raised a question of material fact as to whether trial counsel's failure to pursue additional DNA was deficient performance.

---

[6]     Notably, regarding the knife DNA results, the forensic scientist also testified that there was additional DNA on the knife from another person but that no conclusion could be drawn from the results due to the small amount of DNA present.

In dismissing Adams's claim of ineffective assistance of counsel for failing to pursue independent DNA testing, the district court concluded:

> Now, DNA testing, while this post-conviction case was pending, did take place. And so [Adams] was afforded the opportunity to seek and complete the DNA testing that he sought in the matter, but in receiving that, I guess, the result that he wanted did not bear out. And I don't see how any--the DNA report that we have, that there was not a genetic transfer would have made any difference in the outcome of the trial.

On appeal, Adams argues that the clothing DNA results constitute sufficient evidence warranting an evidentiary hearing on his claim because, by applying the proper standard (taking the evidence in the light most favorable to Adams), the absence of the surviving victim's DNA on the deceased victim's clothing shows that the surviving victim was not stabbed by Adams. Specifically, Adams alleges that there would have been a transfer of DNA from the surviving victim to the deceased victim's clothing had the altercation occurred as the State's theory suggested--that the surviving victim was stabbed first and the deceased victim second. Thus, Adams claims that the DNA report showing an absence of the surviving victim's DNA on the deceased victim's clothing indicates the surviving victim had not been stabbed when he first left the car and that he may not have been stabbed by the knife at all. In either case, Adams argues that the results from additional DNA testing would have supported his testimony and could have been used to impeach the State's evidence that Adams stabbed the surviving victim.

We note that the results from the DNA analysis conducted during the post-conviction case are limited. The deceased victim suffered five stab wounds, but only four swabs were submitted for analysis--two from the deceased victim's shirt and two from his jacket. The DNA report indicates that only the deceased victim's DNA was detected. The record is not clear as to whether the swabs tested two wounds at two different levels of clothing or four separate wounds. Furthermore, the absence of the surviving victim's DNA on any of the four swabbed areas of the deceased victim's clothing does not constitute exculpatory evidence proving the surviving victim was not stabbed first or that he was not stabbed by the knife at all. The report did not include analysis of all of the deceased victim's wound sites or contemplate other possible explanations as to why there may not be DNA from the surviving victim on the deceased victim's clothing. Given the limited DNA results, Adams's contention that the report shows the surviving victim

14

was not stabbed when he first left the car and that he may not have been stabbed by a knife at all is conclusory and not supported by the report.

However, even taking the DNA report in a light most favorable to Adams and presuming that it bolstered his testimony, there was enough additional evidence admitted at trial for the jury to conclude that Adams stabbed the surviving victim. At trial, the surviving victim testified that Adams struck him under the arm while he was exiting the vehicle. Physical evidence was admitted showing the surviving victim's wound, which could be compared to the deceased victim's stab wounds. A paramedic testified that the wound was consistent with what she had seen of stab wounds in her prior experience. Adams admitted that he used his knife in the altercation. Moreover, there was no other testimony or evidence suggesting that any other person held a knife during the incident or that the surviving victim's puncture wound was caused by a different object. Based on the other evidence admitted at trial for the jury's consideration and the limited nature of the DNA results, we hold that Adams has failed to show the district court erred in concluding that the report suggesting the absence of DNA transfer would not have changed the outcome of the trial. Consequently, Adams has failed to show that trial counsel's performance was both deficient and prejudicial. Accordingly, the district court did not err in summarily dismissing Adams's claim that trial counsel was ineffective for failing to seek independent DNA testing of the deceased victim's clothing.

### 3.     Closing argument concession

Adams alleges that the district court erred in summarily dismissing his claim that his trial counsel was ineffective for conceding that Adams was guilty of manslaughter during closing argument without first consulting Adams or seeking his permission. In his petition, Adams claims that, in closing argument, trial counsel's numerous use of the words "sudden quarrel that rises to the heat of passion" and other similar statements reflect jury instruction language for manslaughter. Adams asserts that repeated use of such language, without his consent, conceded to the jury that Adams was guilty of the lesser charge.

In summarily dismissing Adams's claim, the district court stated:

> I think it's essential to note that [trial counsel] never instructed the jurors to return a verdict of manslaughter, nor did they. And, again, I think his--it's important to clue on what he did say to the jury. He maintained it was a fight. He

maintained it was a quarrel. He maintained it was self-defense as he stated in his deposition. Unfortunately, the jurors didn't agree.

From the record that I reviewed, the statements of counsel were strategically designed to minimize the charges against his client. His client was charged with first degree murder, and I think the findings of the jury evidence the facts that further because Mr. Adams was found not guilty of the robbery, was not convicted of first degree murder. So summary dismissal is appropriate.

On appeal, Adams argues that the district court effectively found that trial counsel conceded guilt to a lesser crime and abandoned the self-defense theory. Thus, Adams contends that whether counsel's performance was deficient in conceding that Adams was guilty of a lesser charge and abandoning self-defense without his consent presents a genuine issue of material fact.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Courts should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690; *see also Gonzalez*, 151 Idaho at 172, 254 P.3d at 73 (holding that tactical or strategic decisions of trial counsel will not be second-guessed on appeal except in narrow situations).

In this case, Adams has failed to identify any actual concession by trial counsel that Adams was guilty of the lesser crime of manslaughter. Rather, Adams asks this Court to conclude that trial counsel effectively conceded guilt to the charge based on the language trial counsel used in presenting his closing statement. We decline to do so. Trial counsel began his closing statement seeking to demonstrate that Adams lacked the requisite intent to substantiate the first degree murder charge by describing the altercation as a "sudden quarrel that rise[s] to the heat of passion." Although the description of the altercation was reflective of the language in the jury instructions for manslaughter, it does not follow that the use of such language means trial counsel conceded that the State had proven all the elements of the crime. Consequently,

Adams has failed to show that the language used by trial counsel amounted to a concession of guilt to a lesser-included crime, much less an impermissible strategic decision.

Adams also argues that trial counsel's description of the altercation as being a sudden quarrel rising to the level of heat of passion constituted abandonment of his self-defense theory contrary to his direction that he be acquitted of all charges. However, the record shows that Adams's self-defense theory was before the jury throughout all proceedings.

During opening statements, trial counsel told the jury that, during the altercation, Adams perceived a danger, feared for his life, and extracted a knife during the fight to protect himself. During the trial, defense counsel elicited testimony from Adams that he felt that he was in danger in fighting two men and was forced to defend himself from the attack. Prior to deliberations, the jury was instructed on the theory of self-defense. Finally, during closing argument, trial counsel emphasized the sudden nature of the altercation and referenced self-defense multiple times. For example, trial counsel stated:

> You know, I told you talking about self-defense, you know, hindsight is good, 20-20 is good. It describes what happened, where he was. I wasn't there. They were not there. But one thing we know for sure is there was testimony about two people swinging at each other. . . .
> . . . .
> Hindsight is good. 20-20 is good. I wasn't there, you were not there, and he told you how he felt. That's why we have that self-defense jury instruction. You don't have to be 100 percent sure before you defend yourself. You don't. And not only that, and this is even better, you don't have to retreat. I didn't make that all up. It's right there in the jury instruction. You can stand your ground.
> He's entitled to the benefit of that law, just like each and every one of us are.
> This is a fight, a sudden quarrel that rise[s] to the level of heat of passion that took place among a group of drunken people that night, and the end result was tragedy, deadly, I concede.

Thus, Adams's contention that trial counsel impermissibly abandoned a self-defense theory is not borne out by the record. Moreover, trial counsel's description of the altercation is not inconsistent with Adams's self-defense theory and does not constitute an abandonment of his goal of acquittal.

Because Adams has failed to show that his trial counsel conceded guilt to a lesser crime without consent or abandoned Adams's self-defense theory, he cannot demonstrate that trial

counsel's closing statement constituted deficient performance.[7]  Accordingly, the district court did not err in summarily dismissing Adams's claim of ineffective assistance of counsel in this regard.

### 4.    Failure to call witnesses

Adams argues that the district court erred in summarily dismissing his claim that trial counsel was ineffective for failing to investigate and call two witnesses in Adams's defense at trial.  Specifically, he asserts that the testimony of these witnesses[8] would have supported his testimony that the deceased victim was the aggressor in the altercation and that Adams acted in self-defense.  Adams alleges that the absence of the two witnesses' testimonies was prejudicial because the jury might have had a reasonable doubt about whether Adams was acting unlawfully.

Regarding the first witness, Adams provided an affidavit in support of his post-conviction petition from his sister alleging that the first witness had been at the same bar as Adams and his passengers the night of the altercation.  The affidavit indicated that, days after the altercation, the witness told Adams's sister that the deceased victim had been aggressive and that Adams's sister subsequently communicated this conversation to trial counsel.  Adams also alleged that trial counsel, in a later deposition, did not recall the witness.  Adams argued that trial counsel's failure to investigate this possible witness was deficient performance.

In summarily dismissing Adams's claim as to the first witness, the district court found:

> This, again, appears to be an issue strategy for [trial] counsel.  I conclude that Mr. Adams has failed to show that [the first witness's] testimony would have changed the course of the criminal case or the outcome of the trial.
>
> Further, Mr. Adams has failed to show that [the first witness] would have testified consistently with what his sister has stated nor that she was even available to testify.  Again, I see this at the time as a strategic decision, a trial tactic engaged in by counsel.  And I conclude this claim fails.  Motion for summary dismissal granted here as well.

---

[7]    Because we conclude that trial counsel did not concede that Adams was guilty of manslaughter or that he abandoned Adams's self-defense theory, we need not address his additional argument concerning the presumption of prejudice.

[8]    The witnesses were the subject of Adams's motion for investigative services.

Regarding the second witness, Adams attached to his petition a witness statement prepared for the police, which alleged that the second witness was awakened by voices yelling at the time of the altercation. Upon looking out her window, the witness saw car headlights and heard an unknown male yelling, "get the [f***] back here." The witness then called 911 and the vehicle drove off. Adams alleged that the second witness was listed as a State's witness but was never called to testify by either the State or the defense. Adams argued that trial counsel's failure to call the second witness was deficient performance because the second witness's statement supported Adams's testimony that the deceased victim yelled "get the [f***] back here, I am not done with you yet" and Adams's trial testimony that he was the one being attacked and drove away once he could do so. Adams alleged that these statements would have shown that the deceased victim was the aggressor in the fight and was still willing and able to fight when Adams was attempting to drive away.

In summarily dismissing Adams's claim as to the second witness, the district court found:

> Again, I conclude this was an issue of strategy for [trial] counsel. And, again, I cite Howard versus State. After considering his alternatives, [trial counsel] made the tactical decision not to call [the second witness]. [Adams] failed to show that [the second witness's] testimony would have changed the course of the criminal case or the outcome of the trial. [Adams] has not shown that [the second witness] would have testified consistently with his version of the events nor that she was even available. And thus I conclude that this claim fails as well.

On appeal, Adams argues that the district court's finding that trial counsel made a strategic decision to not call either witness was not based upon any evidence in the record and such testimony may have supported Adams's self-defense claim. It is not enough to allege that a witness would have testified to certain events or would have rebutted certain statements made at trial without providing, through affidavit, nonhearsay evidence of the substance of the witness's testimony. *Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008).

As to the first witness, Adams's argument is squarely predicated on what the first witness presumptively may have testified to based on an affidavit submitted by Adams's sister alleging that the first witness told her about the deceased victim sometime after the altercation. Adams only provided an affidavit from his sister and never provided an affidavit from the first witness. Adams's sister's affidavit alleging what another witness may have testified to is hearsay and

speculative and does not constitute admissible evidence for purposes of summary dismissal. As to the second witness, Adams only offered conclusory allegations as to what the second witness would have testified to at trial based on a police report. Such argument is mere speculation and inadmissible. Thus, Adams failed to provide admissible evidence concerning the substance of either witness's testimony. Moreover, Adams failed to show that either witness would have been available to testify and that either would have testified consistently with her respective alleged statements and consistently with Adams's version of the events. Adams has not provided evidence sufficient to overcome the presumption that trial counsel made a strategic decision not to call either witness. Accordingly, Adams has failed to raise a genuine issue of material fact as to whether his trial counsel was ineffective for failing to investigate and call the two witnesses in Adams's defense at trial.

## C. Cumulative Error

Adams contends the effect of the ineffective assistance of counsel allegations addressed above amounts to cumulative error that warrants relief. A necessary predicate to application of the doctrine is a finding of error in the first instance. *Stevens v. State*, 156 Idaho 396, 421, 327 P.3d 372, 397 (Ct. App. 2013); *Boman v. State*, 129 Idaho 520, 527, 927 P.2d 910, 917 (Ct. App. 1996). Because Adams has failed to make a necessary showing he is entitled to relief on any of his ineffective assistance of counsel claims, the doctrine of cumulative error has no applicability in this case.

## D. Motion for Reconsideration

Adams argues that the district court erred in denying Adams's motion for reconsideration. The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court. *Campbell v. Reagan*, 144 Idaho 254, 258, 159 P.3d 891, 895 (2007); *Carnell v. Barker Mgmt. Inc.*, 137 Idaho 322, 329, 48 P.3d 651, 658 (2002). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion; acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000.

### 1.     Closing argument concession

Adams moved for reconsideration of the district court's summary dismissal of his ineffective assistance of counsel claim for conceding in closing argument that Adams was guilty of manslaughter.  Adams argues that the district court erred in summarily dismissing the claim based on the analysis of *Strickland* and as a matter of strategy.  The district court subsequently denied Adams's motion finding, *inter alia*, that trial counsel's closing argument did not amount to a concession that was synonymous with a guilty plea.  The district court further found that it was trial counsel's strategic decision to present the facts of the case in his closing argument in a way that minimized Adams's conduct in an attempt to persuade the jury to find Adams guilty of a crime less than first degree murder while also maintaining a self-defense claim.  On appeal, Adams alleges that trial counsel conceded guilt to manslaughter and the district court should not have dismissed his claim based on *Strickland* or as a matter of strategy.  Citing to *Stano v. Dugger*, 921 F.2d 1125, 1152 (11th Cir. 1991), Adams argues that the United States Supreme Court, in *United States v. Cronic*, 466 U.S. 648 (1984), created an exception to the *Strickland* standard for ineffective assistance of counsel and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed--where there has been an actual breakdown in the adversarial process at trial.  Adams then asserts that, when trial counsel concedes an element of reasonable doubt during closing argument, there is an actual breakdown in the adversarial process.  *See State v. Swanson*, 943 F.2d 1070, 1075-76 (9th Cir. 1991).

Adams's argument is based on the presumption that trial counsel conceded guilt to manslaughter.  However, we previously concluded that Adams has not shown that trial counsel conceded that Adams was guilty of manslaughter or that trial counsel abandoned a self-defense theory.  Consequently, Adams has failed to show an actual breakdown of the adversarial process and we need not address his argument further.  Accordingly, Adams has failed to show that the district court abused its discretion by denying Adams's motion for reconsideration.

### 2.     DNA testing

Adams moved for reconsideration of the district court's summary dismissal of his claim of ineffective assistance of trial counsel for failing to seek independent DNA testing of the deceased victim's clothing to contest the State's theory that Adams stabbed the surviving victim.

Adams argued that the DNA results presented sufficient evidence to warrant an evidentiary hearing. Adams asserted that any conclusions of what the additional DNA testing showed is an issue for the evidentiary hearing and would be explained by expert testimony. In support of his motion, Adams submitted a document styled as an affidavit[9] from an expert witness who, Adams alleged, would provide expert testimony during an evidentiary hearing that the DNA results suggested a strong probability that Adams did not stab the surviving victim. Specifically, the expert witness's affidavit stated:

> 7. Had I been contacted, I would have been willing to review the forensic testing that was conducted, conduct additional testing that was necessary and testify to my findings.
> 8. I would expect to find DNA on an object or weapon after it punctured a person and caused extensive bleeding.
> 9. Assuming that the knife or object that caused a puncture wound had not been cleaned in any way, it is extremely unlikely that DNA would not be found on that object or weapon.
> 10. Hypothetically, if someone were to stab one person (person A) with an instrument and then stab a second person with that same instrument (person B), I would expect to find a mixture of person A and person B's DNA on the instrument. If person B was stabbed through his or her clothing, I would also expect to find person A's DNA transferred to person B's clothing.

The district court denied Adams's motion for reconsideration, concluding that Adams had failed to show that the DNA evidence would have changed the outcome of the trial.

We previously concluded above that Adams has failed to show that district court erred in summarily dismissing Adams's claim that trial counsel was ineffective for failing to seek independent DNA testing of the deceased victim's clothing. Unlike Adams's opposition to summary dismissal, Adams provided an affidavit from a DNA expert witness with his motion for reconsideration. Based on the expert's affidavit, Adams asserts that, because there was no DNA from the surviving victim on the four swabs taken from the deceased victim's clothing, Adams did not stab the surviving victim. However, the relevant substance of the expert witness's affidavit only opined that he "would expect" a transfer of DNA. Such a speculative opinion does not constitute the type of evidence sufficient to show that the outcome of the trial would have

---

[9] Due to a facsimile error, the affidavit in the district court's file did not have a signature and notary page attached.

been different. The affidavit does not address or cure the deficiencies in the testing noted above, As previously discussed, there was sufficient evidence admitted at trial supporting Adams's conviction for aggravated battery. Therefore, Adams has failed to demonstrate that the clothing DNA results or the expert witness's testimony would have changed the outcome of the trial. Accordingly, we hold that Adams has failed to show that the district court abused its discretion by denying Adams's motion for reconsideration.

### 3.    Failure to call witnesses

Adams moved for reconsideration of the district court's summary dismissal of his claim of ineffective assistance of trial counsel for failing to investigate and call two witnesses in his defense at trial. Adams provided no new information in his motion for reconsideration concerning this claim. Because we have held that the district court did not err in summarily dismissing Adams's ineffective assistance of counsel claim for failing to investigate two witnesses, we likewise hold that the district court did not err in denying Adams's motion to reconsider.

### IV.

### CONCLUSION

The district court did not abuse its discretion in denying Adams's motion for investigative funds. Adams has not shown that the district court erred in summarily dismissing Adams's claims of ineffective assistance of counsel and has not demonstrated cumulative error. The district court did not abuse its discretion in denying Adams's motion for reconsideration of the district court's summary dismissal of his post-conviction claims. Accordingly, the district court's judgment summarily dismissing Adams's petition for post-conviction relief and order denying Adams's motion for reconsideration are affirmed. Costs are awarded to respondent on appeal.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.

23