**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 49223**

| | | |
|---|---|---|
| **FRANCIS MARCH,** | ) | |
| | ) | **Filed:  March 1, 2023** |
| **Petitioner-Appellant,** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| **v.** | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| **STATE OF IDAHO,** | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| **Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Steven Hippler, District Judge.

Judgment summarily dismissing petition for post-conviction relief and order denying motion to conduct discovery, <u>affirmed</u>.

Nevin, Benjamin & McKay LLP; Dennis Benjamin, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Francis March appeals from the judgment summarily dismissing her petition for post-conviction relief and order denying motion to conduct discovery.  March alleges the district court erred in summarily dismissing her petition because the ineffective assistance of trial counsel claim raised a genuine issue of material fact.  She also argues the district court erred when it denied her motion to conduct discovery, specifically, DNA testing on a rope used in the underlying crime.  A post-conviction claim may be summarily dismissed if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Further, a request for discovery may be denied if discovery is not necessary to protect a substantial right.  March failed to establish a genuine issue of material fact regarding her claim and granting March's request to conduct discovery was not necessary to

1

protect a substantial right because discovery would not have produced any mitigating or exculpatory evidence. The district court did not err in summarily dismissing March's petition for post-conviction relief or in denying the motion to conduct discovery. The judgment summarily dismissing March's petition for post-conviction relief and the order denying motion to conduct discovery are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

March and her boyfriend, Anthony Barclay, conspired to rob Mark Irwin, a man March had known for years and, at times, on whose property she resided. March drugged Irwin with quetiapine[1] to incapacitate him. After drugging him, to ensure he was unconscious, March attempted to, or did, strike Irwin in the head with an axe handle. Then she and Barclay placed plastic bags over Irwin's head, and March taped the bags closed around Irwin's neck. Barclay then placed a rope around Irwin's neck, and March tied the rope to a door knob. Irwin died. Barclay wrapped Irwin's body in tarps, placed Irwin in the back of Irwin's van, and March and Barclay eventually drove the van into the mountains and abandoned it. March solicited some juveniles to dig a hole to bury Irwin's body; she planned to pour lye and concrete on the body, but the hole was never completed; and Irwin's body was left in his van.

March and Barclay took numerous items from Irwin's home, some of which they pawned and others they exchanged for methamphetamine. After approximately three weeks in the August heat, Irwin's badly decomposed body was located. The autopsy concluded Irwin died from asphyxiation due to the plastic bags placed around his head and taped around his neck.

March pleaded guilty to first degree murder; specifically March admitted that she, along with another, unlawfully killed and murdered Irwin during the commission or attempted commission of robbery and/or burglary by drugging Irwin and then strangling him to death. March submitted a written factual basis for her guilty plea. Therein, March admitted she administered the drug quetiapine with the intent to render Irwin unconscious; struck Irwin with the intent to render him unconscious; and wrapped the end of the rope, which Barclay had placed around

---

[1]    Quetiapine is a medication used to treat mental health/mood conditions and is also known by the brand name Seroquel.

Irwin's neck, to a door knob. March admitted she committed these acts with the intent to render Irwin unconscious so she could rob him, but denied any intent to kill Irwin.

At sentencing, March attempted to minimize her role in Irwin's death and claimed that it was Barclay who killed Irwin. However, the presentence investigation report (PSI) detailed March's level of involvement in the murder. March's psychological evaluation also described her, in part, as manipulative; having "evidence of pride in criminal behavior and sadistic tendencies"; and as a high risk to re-offend with the re-offense potentially including "sadistic behavior, severe violence, mistreatment of children, drugs, alcohol, theft, or burglary." The psychological evaluation also found March to be less amenable to treatment than most offenders. In light of the information provided, the trial court rejected March's description of herself as a mostly innocent bystander and found her to be significantly more involved in the murder than she claimed. March was sentenced to a term of life, with twenty-seven years determinate. March appealed her sentence, which was affirmed on appeal. *State v. March*, Docket No. 45992 (Ct. App. Feb. 13, 2019).

Thereafter, March filed a pro se petition for post-conviction relief, asserting that trial counsel performed deficiently for failing to present evidence at sentencing that it was Barclay, not March, who killed Irwin. She further asserted the failure caused the trial court to sentence her more harshly because the trial court believed March was the killer. The district court appointed March post-conviction counsel. The State filed an answer, raising as one of several affirmative defenses that March's claims were bare and conclusory. Post-conviction counsel provided a supplemental affidavit from March, as well as additional documents, but explicitly declined to amend the petition. The State filed an amended answer, denying the claims and again raising various affirmative defenses. The district court issued a notice of intent to dismiss March's petition on the grounds that March failed to raise a genuine issue of material fact regarding any of her claims. The district court found the trial court did not consider March solely or primarily responsible for Irwin's death and, thus, she was not sentenced more harshly. Consequently, the court gave notice of its intent to dismiss March's claim of ineffective assistance of counsel at sentencing as she failed to allege a genuine issue of material fact entitling March to an evidentiary hearing.

March filed a response to the district court's notice of intent to dismiss, reiterating the arguments contained in her supplemental affidavit. March then filed a motion requesting

3

discovery so the rope found around Irwin's neck could be tested for DNA; the motion included an expert's affidavit and two supporting memoranda. March argued that the DNA testing would reveal Barclay's DNA on the rope where his hands had been positioned, which would support her claim that it was Barclay who killed Irwin. The State objected to the motion on the grounds that the DNA testing would not produce any exculpatory or relevant evidence. The State also filed a motion to dismiss the petition for reasons consistent with the reasons provided by the district court in its notice of intent to dismiss. The district court denied March's discovery request, concluding that the DNA testing would not result in any exculpatory or mitigating evidence and thus, was not necessary to protect March's substantial rights. The district court then dismissed March's petition for post-conviction relief. March filed a motion to reconsider the denial of the discovery request and to set aside the dismissal. The State objected. The district court denied the motion to reconsider its order dismissing the petition. March appeals from the judgment summarily dismissing her petition for post-conviction relief and order denying her motion to conduct discovery.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

When a petitioner believes discovery is necessary for acquisition of evidence to support a claim for post-conviction relief, the petitioner must obtain authorization from the district court to conduct discovery. I.C.R. 39(b); *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (2001). Discovery in a post-conviction action is not required unless necessary to protect a petitioner's substantial rights. *Murphy v. State*, 143 Idaho 139, 148, 139 P.3d 741, 750 (Ct. App. 2006); *Griffith v. State*, 121 Idaho 371, 375, 825 P.2d 94, 98 (Ct. App. 1992). Discovery may be denied where the petitioner's claims are nothing more than speculation, unsupported by any evidence. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Indeed, discovery may not be used to

4

engage in fishing expeditions, as post-conviction actions provide a forum for known grievances, not an opportunity to search for them. *Murphy*, 143 Idaho at 148, 139 P.3d at 750.

Whether to authorize discovery is a matter directed to the discretion of the court. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

5

Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal, March argues the district court: (1) erred in summarily dismissing her ineffective assistance of counsel claim based on trial counsel's failure to present evidence at sentencing that Barclay killed Irwin, resulting in March receiving a more harsh sentence; and (2) abused its discretion in denying her request for DNA testing because it did not reach its decision by an exercise of reason.

## A. The District Court Did Not Err in Summarily Dismissing March's Ineffective Assistance of Counsel Claim

March argues the record supports her claim that she was sentenced more harshly because the trial court concluded that she, not Barclay, killed Irwin. Thus, March asserts the district court erred in concluding the trial court did not consider March's degree of culpability as compared to Barclay's degree of culpability and concomitantly erred in dismissing her claim of ineffective assistance of counsel at sentencing.[2] In response, the State asserts that because March only challenges the district court's findings on the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984) on appeal, she waived consideration of whether counsel performed deficiently in relation to this claim and we should affirm on this basis. Alternatively, the State argues the district court correctly concluded March failed to establish a genuine issue of material fact as to either of the *Strickland* prongs.

---

[2] Although March made other claims in her petition for post-conviction relief, this is the only claim of ineffective assistance of counsel that she has raised on appeal and, as such, we need not address any other claims of ineffective assistance of counsel.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Here, the district court made several findings regarding March's claim of ineffective assistance of counsel at sentencing. As to the deficient performance prong of the *Strickland* analysis, the district court concluded:

(1) Trial counsel's sentencing strategy that he did not "want to rehash the facts of the case" because sufficient evidence had been presented via March's written factual basis for her guilty plea and through March's sentencing memorandum and because he wanted to "protect the integrity of Francis March, and to be her champion and advocate" was not the result of inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective review.

(2) "March's grievances are centered upon [trial counsel's] failure to pin Barclay as Irwin's murderer rather than her. She contends that if [trial counsel] placed more of the blame on Barclay, her sentence would not be as harsh. However, contrary to March's insistence, it was irrelevant who ultimately did the deed that resulted in Irwin's death. March pled guilty to killing Irwin 'along with another person' while carrying out a burglary or robbery. There was nothing in the charge ascribing the actual killing solely to her. Thus, [trial counsel's] alleged failure to undertake efforts to pin the murder solely on Barclay and paint him as the mastermind cannot be characterized as a shortcoming."

(3) March's claims were belied by the record because in the sentencing memorandum submitted by trial counsel, he "discussed at length evidence suggesting that Irwin died at the hands of Barclay and insisting that March never intended to kill Irwin."

7

The district court also referenced the sentencing hearing transcript to conclude that trial counsel disputed the State's characterization of March as a "professional criminal" and presented witnesses to testify on March's behalf. Thus, the district court found: (1) trial counsel's focus at sentencing was a strategic decision; (2) it was not a "shortcoming" to fail to attempt to cast more blame on Barclay in light of the charging language to which March pleaded guilty; and (3) March's claim was belied by the record.

March does not address any of these findings concerning the deficient performance prong in her opening brief on appeal; does not argue that trial counsel's sentencing strategy to focus on March's positive characteristics and amenability for treatment was unreasonable; does not address why attempting to cast more blame on Barclay was a shortcoming in light of the charges to which March pleaded guilty and her acknowledgment of her role in Irwin's death; and does not assert that the sentencing memorandum did not attempt to cast more blame onto Barclay. Instead, her argument focuses solely on the prejudice prong of the *Strickland* analysis. Specifically, March argues: "The court's finding that it did not find Ms. March killed Mr. Irwin and take that into consideration at sentencing is not supported by the record." She further argues:

> [T]he court's assertion that March's degree of fault as compared to Mr. Barclay's did not play a role at sentencing is not supported by the evidence . . . . [T]he record shows that the court concluded the evidence showed Ms. March killed Mr. Irwin . . . . The record is clear that the court did conclude Ms. March killed Mr. Irwin and that fact did play a role in the sentence imposed.

It is well established that to prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient *and* that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self*, 145 Idaho at 580, 181 P.3d at 506. Because March fails to challenge the district court's finding regarding her attorney's alleged deficient performance, her argument on appeal that she was entitled to an evidentiary hearing on this claim necessarily fails.

However, even if March's arguments on appeal can be construed as addressing both the deficient performance and the prejudice prongs, she has still failed to show error in the summary dismissal of her ineffective assistance of counsel claim. March failed to establish a genuine issue of material fact that her trial counsel provided deficient performance at sentencing because casting more blame on Barclay was irrelevant to March's legal culpability; trial counsel's sentencing

8

strategy was reasonable; and counsel did, in fact, argue at sentencing that Barclay deserved more blame for Irwin's death.

First, although March continues to maintain that she was not solely or even primarily responsible for Irwin's death, March pleaded guilty to first degree murder, admitting that she, "along with another, did unlawfully kill and murder Mark Irwin, a human being, during the commission or attempted commission of the crime(s) of Robbery and/or Burglary." And, at the change of plea hearing, March repeatedly acknowledged that she was guilty of first degree murder. In light of March's guilty plea to first degree murder and repeated acknowledgments of her guilt, it was irrelevant which person committed the final act from which Irwin died. So long as March played a contributing role, she was as legally responsible as her co-defendant for the death. Indeed, March's post-conviction counsel conceded that failing to cast more blame on Barclay was irrelevant to establishing her legal culpability, but nonetheless argued it was "highly relevant" to the sentence she received.

Second, trial counsel's sentencing strategy of focusing on March's positive characteristics and amenability for treatment instead of casting more blame on Barclay was not unreasonable in light of the record. March made multiple statements to witnesses that she and Barclay placed the plastic bags around Irwin's head, she taped the bags shut, and she believed Irwin died shortly thereafter. Ten months after being charged with first degree murder and demanding an interview with law enforcement, March then described Irwin dying as a result of Barclay's strangulation. However, this claim was not supported by any evidence other than March's statements. Trial counsel's sentencing strategy, as revealed by trial counsel's comments at sentencing, was to focus on March's positive characteristics; providing details of March's unsupported theory would have undermined that goal, or emphasized or drawn attention to other contradictory information contained in the PSI. As such, it was not a "shortcoming" to argue a theory that would have undermined the articulated sentencing strategy.

Third, March's claim that trial counsel failed to lay more blame on Barclay is belied by the record. Trial counsel submitted a sentencing memorandum doing just that--outlining Barclay's role and responsibility for Irwin's death. Trial counsel also made comments at the sentencing hearing designed to minimize March's role in Irwin's death, and the trial court found that March went to "considerable length" to minimize her role in the murder. Thus, the district court correctly

9

concluded that trial counsel's performance at sentencing was not unreasonable or deficient performance.

March similarly failed to establish any genuine issue of material fact that she was prejudiced as a result of trial counsel's sentencing strategy. March's entire prejudice argument rests on a false factual predicate--that the trial court held her, rather than Barclay, primarily or solely responsible for Irwin's death and sentenced her more harshly because of that misunderstanding. However, the record does not support that premise. To the contrary, the trial court found that "the extent to which Barclay played a role in the burglary, robbery and murder of Irwin is not relevant to the claim to which she plead guilty, nor was it an issue the Court weighed in her sentencing."

March nonetheless argues the district court's statements that March's degree of fault did play a role at sentencing because "the record shows that the court concluded the evidence showed Ms. March killed Irwin." In support of this argument, March cites the following comments by the trial court at sentencing:

> [March] has gone to considerable length to try to convince this Court and others that she was a mere innocent bystander in the actual murder of Mr. Irwin. The evidence suggests she was significantly more involved, and I believe her attempt to characterize herself in this way is an understatement.
> . . . .
> In addition to the evidence suggesting a plan to poison from the outset, there are significant admissions, given in the jail, to the defendant asphyxiating Mr. Irwin with a plastic bag over his head, and the coroner believes that this is the cause of death; and the evidence seems to support that, frankly.

March then argues these excerpts demonstrate that the record clearly establishes the trial court concluded March killed Irwin and that fact did play a role in the sentence imposed. We disagree.

These excerpts do not support March's argument that the trial court held March primarily or solely responsible for Irwin's death and sentenced her more harshly because of that finding. The first excerpt establishes only that the trial court found March was more involved in Irwin's death than as an innocent bystander. That is not the factual equivalent of finding March was the killer. Second, that March made admissions to asphyxiating Irwin is supported in the record, as there were statements from several witnesses wherein March described taping the bags around Irwin's neck and that he died shortly thereafter. Third, the coroner concluded Irwin's death was caused by asphyxiation as a result of the plastic bags, not strangulation. In light of the above, the trial court's statements are simply an acknowledgement that the record contained substantial

10

evidence of March's involvement in Irwin's death, but they do not support the proposition that the court pinned sole or primary responsibility for Irwin's death on March.

Without that factual underpinning, March's assertion of prejudice--that she was sentenced more harshly because the trial court held her primarily responsible for Irwin's death--fails. Nothing in the record indicates March was sentenced more harshly because the trial court believed she was solely or primarily responsible for Irwin's death. Although March invites us to compare her sentence to Barclay's sentence, we decline to do so, in part because Barclay was not charged with first degree murder and, thus, there is no similar charge to compare. *See State v. Seifart*, 100 Idaho 321, 323, 597 P.2d 44, 46 (1979) (holding mere fact that there is disparity of sentences between multiple defendants involved in same criminal activity or between different defendants who committed similar crimes does not establish excessiveness of sentence as to any particular defendant). Moreover, sentencing is individualized to the defendant and takes into account not only the defendant's conduct in a particular case, but also the defendant's criminal history and other factors pertinent to sentencing. *See id.* Because March failed to provide factual support establishing a genuine issue of material fact for either prong of the *Strickland* test, the district court did not err in summarily dismissing March's ineffective assistance of counsel claim.

March also argues that trial counsel's decision not to conduct DNA testing on the rope was based on inadequate preparation and was not a reasonable strategy and, thus, constituted deficient performance. The resulting prejudice of this alleged deficiency is that March received a harsher sentence. To the extent this constitutes a separate claim of ineffective assistance of trial counsel, March does not raise this claim until her reply brief. Idaho appellate courts do not consider arguments raised for the first time in a reply brief but, instead, look only to the arguments raised in the initial brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). March makes no such argument in her opening brief, thus, she has waived consideration of this claim.

Even if reviewed on the merits, March's claim fails. In essence, she argues that because no testing was done, trial counsel could not have known what the testing would have revealed and, thus, it was unreasonable not to get the testing. The substance of the DNA testing claim is discussed below. In short, however, the failure to obtain testing which: (1) would not have established what March argues it would have established; (2) would not have reduced March's legal culpability; and (3) would not have resulted in a lesser sentence does not show inadequate preparation. Similarly, because March's prejudice argument rests on an incorrect factual premise

11

(that she was sentenced more harshly), she also cannot establish any prejudice from the lack of testing. Consequently, March fails to establish a genuine issue of material fact as to either of the *Strickland* prongs for this claim, and the summary dismissal of the post-conviction petition is affirmed.

**B.      The District Court Did Not Err in Denying March's Motion to Conduct Discovery**

March alleges the district court erred by denying her discovery request to test the rope found around Irwin's neck for Barclay's DNA. In response, the State argues the district court did not err.

When a petitioner believes discovery is necessary for acquisition of evidence to support a claim for post-conviction relief, the petitioner must obtain authorization from the district court to conduct discovery. I.C.R. 39(b); *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Discovery in a post-conviction action is not required unless necessary to protect a petitioner's substantial rights. *Murphy*, 143 Idaho at 148, 139 P.3d at 750; *Griffith*, 121 Idaho at 375, 825 P.2d at 98. Discovery may be denied where the petitioner's claims are nothing more than speculation, unsupported by any evidence. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Indeed, discovery may not be used to engage in fishing expeditions, as post-conviction actions provide a forum for known grievances, not an opportunity to search for them. *Murphy*, 143 Idaho at 148, 139 P.3d at 750.

Idaho Criminal Rule 39 addresses discovery in post-conviction cases, reading in relevant part: "The provisions for discovery in the Idaho Rules of Civil Procedure do not apply except as and only to the extent ordered by the trial court." I.C.R. 39(b). A post-conviction court is not required to order discovery unless it is necessary to protect an applicant's substantial right. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Discovery can be denied where the petitioner's claims are nothing more than speculation, unsupported by any evidence. *Id*.

March filed a discovery request to test the rope found around Irwin's neck for Barclay's DNA. March argued that if she could establish that Barclay's DNA was on the rope in specific locations, it would support her theory that Barclay strangled Irwin with the rope and Irwin died from that strangulation (as opposed to the asphyxiation from the plastic bags), giving credence to her assertion that Barclay was the killer. The only evidence March submitted with her motion was an affidavit from an expert that indicated, generally, a rope could be tested for touch DNA. The State opposed the motion on multiple grounds, arguing that even if Barclay's DNA was found on the rope: (1) it would not establish when the DNA was deposited; (2) the DNA deposits would

12

not prove that Barclay strangled Irwin; and (3) the DNA deposits would not prove that Irwin died as a result of strangulation.

The district court agreed with the State. The court addressed the request for DNA testing as a "routine request" for discovery pursuant to Idaho Criminal Rule 39 as opposed to discovery pursuant to I.C. § 19-4902, as the request did not meet several of the requirements of I.C. § 19-4902. The district court relied on *Murphy* to conclude that it had discretion to deny discovery "where the applicant did not show any probability that further scientific examination or independent testing would yield exculpatory evidence." The district court concluded that in order for the testing to be relevant, March needed "to provide some evidence besides her own unqualified speculation and belief demonstrating that Irwin's death was caused by Barclay strangling him with a rope rather than by asphyxiation from the plastic bags March taped around his neck or some combination of the violent acts perpetrated against Mr. Irwin."

The district court ultimately denied the motion, finding March "produced no evidence beyond her own belief that strangulation by rope was the cause of death" and that even if Barclay's DNA was located on the rope, "it would not establish Barclay alone as the murderer and, therefore, would not have any mitigation value for March." The district court further reasoned, "Absent proof that a DNA test of the rope would produce mitigating evidence, March's ineffective assistance claims for failing to conduct DNA testing of the rope and failing to present the results as mitigation evidence at sentencing fail."

March alleges the district court erred by denying her discovery request because the district court did not reach its decision by an exercise of reason. She argues the district court was mistaken that March "produced no evidence beyond her own belief that strangulation by rope was the cause of death," because March presented the testimony of an eyewitness and that testimony was corroborated by autopsy photos that show the location of the rope around Irwin's neck and rope impressions around Irwin's neck. The district court correctly concluded March provided no factual support for her claim.

Although March does not identify the eyewitness, it is clear from the record that the eyewitness is March. March cannot use herself to corroborate her own statements. Moreover, as noted by the district court, March's unqualified and speculative statements about what she believes the DNA testing would demonstrate, what caused Irwin's death, and what the autopsy photos show are factual assertions unsupported by any admissible evidence. Consequently, the district court

13

did not err in denying March's request for discovery where that request contained claims that were nothing more than speculation unsupported by any evidence.

March also asserts the district court erred in concluding there was no mitigation value to the DNA evidence because it would not conclusively prove Barclay killed Irwin. March argues she did not need to prove that Barclay was the killer, she only needed to establish a reasonable doubt that she was the killer, since the trial court used her role as aggravation. As discussed above, the trial court did not hold March primarily or solely responsible for Irwin's death. Thus, establishing only that she was not the sole or primary actor would have had no mitigating effect on March's sentence.

March next argues the district court erred because the DNA need not conclusively prove anything by itself, it needed only to corroborate March's statements. As discussed above, the DNA evidence was not relevant to March's legal culpability and would not have corroborated any of her statements because even if Barclay's DNA was on the rope, it would not have shown when Barclay's DNA was deposited on the rope or that Barclay strangled Irwin to death. Thus, the DNA testing would not have yielded any mitigating (or even corroborating) evidence necessary to protect a substantial right and it was not error to deny the motion.

March further argues the district court erred in concluding March did not present any evidence that the rope, in its current state, could be tested or that any relevant results would be obtained. According to March, she presented evidence the rope could be tested and no expert could testify in advance of what test results would reveal. Although March presented the affidavit of an expert who noted that, generally, rope could be tested for touch DNA, the expert provided no opinion that the rope in this case could be tested for touch DNA given that it was saturated with biological material and had been subjected to environmental degradation. Similarly, the affidavit March submitted did not provide any evidence that: (1) the rope, even if it disclosed Barclay's DNA, could identify when Barclay's DNA was deposited on the rope; (2) the DNA could establish that Barclay strangled Irwin; and (3) Irwin died as a result of strangulation. Thus, at best, March provided evidence that, in a general circumstance, rope could be tested for DNA evidence, but she provided no evidence that the rope in this case could be tested or what the results would show. Because March failed to establish the DNA testing would yield any mitigating evidence, the district court did not err in concluding that discovery was not necessary to protect any of her substantial rights.

14

Finally, March argues that the district court's conclusion that no mitigating evidence would be provided by DNA results was premature because, until there are some results, it is impossible to know their mitigating value. We disagree. As March concedes, the results are irrelevant to her legal culpability. As to her sentencing argument, as discussed above, this argument rests on the fallacious factual underpinning that March was sentenced more harshly because the trial court believed she was the killer; because the record does not support that factual premise, March's claim fails. March has failed to show the testing was relevant to any of her post-conviction claims and, thus, she did not show discovery was necessary to protect her substantial rights. As a result, the district court did not err in denying March's motion for discovery.

## IV.

## CONCLUSION

The district court correctly found that March failed to allege a genuine issue of material fact on either deficient performance or prejudice and, thus, she was not entitled to an evidentiary hearing on her post-conviction claims that counsel was ineffective at sentencing. March also failed to show discovery was necessary to protect a substantial right. The judgment summarily dismissing March's petition for post-conviction relief and the order denying her motion to conduct discovery are affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.